Morgan vs. Hammett and others.

*Subrogation to rights of mortgagee.* — *When Circuit Court can license administrator's sale of real estate.*

1. To prevent an administrator's sale of the real property to pay debts of the estate, one J. agreed with H. and his wife (said wife being one of the heirs, and then supposed to be sole heir), and one P. who held a mortgage lien upon said property, that he (J.) would advance money to pay the other debts and also pay the amount of said mortgage, and take an assignment thereof, and a mortgage from H. and wife on all the real estate of which the intestate died seized, as security for the moneys so advanced.    The agreement was executed in other respects, and the moneys so advanced actually applied to the payment of debts of the estate ; but instead of an assignment to J., P. executed and delivered to J. a satisfaction piece, which recited that the money was advanced by J.    At the same time P. delivered the mortgage and note to J. to be kept by him.    Afterward J. assigned and transferred them to A. with the note and mortgage from H. and wife ; and A., after the several obligations were due, demanding payment, H. applied to plaintiff to advance the money, representing that his wife was the sole heir, or if there were others they could not have the land without

paying the claims then due; as they were for moneys owing by the intestate ; and plaintiff advanced the money, taking an assignment from A. of all the securities held by him, and also a note from H. and wife secured by their mortgage on the same land covered by the mortgage of P. It was afterward found that there were several other heirs of the estate. *Held*, that plaintiff was entitled to be subrogated to the rights of P. under his mortgage, and to have the satisfaction thereof vacated.

2. It was no objection to granting this relief, that plaintiff had acquired an administrator's deed to said real property upon a sale which was invalid.

3. Plaintiff was entitled to have the money paid into court by him on such invalid sale refunded.

4. After the payment to him of the amount secured by the mortgage to P., plaintiff should share with the other creditors of the estate ratably for the remainder of the amount advanced by him.

5. The circuit court cannot grant a license for an administrator's sale of real estate to pay the debts of his intestate, except when the county judge is disqualified for acting by the statute. R. S., chap. 117, §§ 16, 17.

6. The fact that the county judge had been of counsel for some parties interested in the matter of such sale, does not disqualify him from acting upon the application for such license.

APPEAL from the Circuit Court for *Rock* County.

This action was commenced in the circuit court for La Fayette county, and removed for trial to the circuit court for Rock county. The facts alleged in the complaint and found by the court, are substantially as follows: In 1850, Frederick Shadwick executed to one Prideaux, at two different times, for borrowed money, three notes for $100 each, payable in one and two years, with interest, and also executed with his wife two mortgages at the same times, upon the south-east quarter of section thirty, town four, in La Fayette county, to secure said notes. Afterward said Frederick and wife conveyed about forty acres of the mortgaged premises to the defendants *George* and *Charlotte Hammett*, and another portion to another person. On the 18th of July, 1854, said Frederick died intestate, leaving a widow (since dead) and his mother, *Elizabeth Sanders*, a brother, *Edmund Shadwick*, and two sisters, *Elizabeth Grovin*, wife of *James Grovin*, and *Charlotte Hammett*, wife of *George*

*Hammett,* his sole heirs at law. When Shadwick died the notes above mentioned had not been paid. At the time of his death he was seized of a " forty " in section twenty-nine of the town above described, as well as of a part of said mortgaged premises. The defendant *White* became administrator of said Shadwick's estate on the 14th of August, 1854.

The claims against the estate, exclusive of those secured by the mortgages to Prideaux, being more than $600 in excess of the value of the personal assets, and *White* having applied to the county court in May, 1855, for leave to sell the real estate to pay the debts, the defendants *George* and *Charlotte Hammett,* for the purpose of raising the money to pay said debts and prevent the sale, applied to one Jones, and represented to him that said *Charlotte* was the sole heir of said Shadwick—they themselves believing at the time that such was the fact. Jones agreed to advance the money due to Prideaux ($398), and take an assignment of his mortgages, and also to advance to the administrator a sum sufficient to pay all the other debts of the estate, and take from said *George* and *Charlotte,* as security therefor, a mortgage upon the real estate of which Shadwick died seized, and of the right, title, and interest which the *Hammetts* acquired by paying said debts. This agreement was fully executed on both sides, except that Jones, instead of taking an assignment of the mortgages, merely had the notes and mortgages delivered to him, and Prideaux executed and delivered to him " satisfaction pieces " therefor, which recited that Jones had advanced the money to pay them. Afterward Jones advanced to said *George* and *Charlotte Hammett* a further sum of $200 — all, or nearly all, of which was expended in paying debts against said estate and expenses attending its settlement; and, to secure the payment thereof, said *George* and *Charlotte* executed to him a mortgage on the forty acres conveyed to them by Shadwick in his life-time. In February, 1856, Jones "sold, assigned, and transferred the said two mortgages executed by

the *Hammetts* to him, and the said Prideaux debts, to one Howells." When these claims became due, Howells pressed the *Hammetts* for payment, and they "applied to the plaintiff to advance the money to Howells to pay said claims, and take an assignment thereof," and offered to execute to him, as security, their note and a mortgage on the lands of which Shadwick died seized, and on their own land, stating to the plaintiff that said *Charlotte* was the sole heir of said Shadwick; "or, if there should prove to be any other heirs, they could not have the land without paying the money then due to Howells, as it was for money owing by Shadwick at the time of his death," etc. The plaintiff thereupon advanced to Howells the sum due him (which was, in all, $1,405), and took from him the securities held by him; and at the same time the *Hammetts* made their note for the amount, due in one year, and executed to him a mortgage upon the real estate described in the two mortgages executed by them to Jones; whereupon the plaintiff "delivered up their notes given to Jones, but retained the mortgages as security for said debt." In October, 1858, the plaintiff commenced an action in the circuit court for Lafayette county against said *George* and *Charlotte Hammett*, to foreclose the mortgage executed by them to him, which action was still pending when the present action was tried. At the commencement of said foreclosure action, the plaintiff was ignorant that there were any other heirs of said Shadwick than said *Charlotte;* but afterward he learned that *Elizabeth Sanders, Elizabeth Grovin*, and *Edmund Shadwick* were heirs as above stated, and that *James Grovin* was the husband of said *Elizabeth;* that they resided in England, and had executed a power of attorney to *Charlotte Hammett* to dispose of their interest in said real estate; and that she had procured such power of attorney to be recorded, and threatened to dispose of said interest under it. — In October, 1859, the administrator, *White*, applied to the county court for leave to sell the real property

of which Shadwick died seized, for the purpose of paying another debt which had been allowed against the estate subsequently to the advance made by Jones as above stated. The county judge, having been of counsel for some of the parties, transferred the application to the judge of the circuit court for said county, to be heard at the time and place of holding the special term of said circuit court in that county, on the first Monday in January, 1860. No term was held at that time; the circuit judge did not appear there, or act upon the matter; but *Mrs. Hammett* was present at the time and place to contest the application. Afterward, at the April term of said circuit court, an order was made by it granting the application of said administrator; but no notice of the hearing at that time was given, nor did any of the persons interested, except the administrator, appear. *White* sold the real estate, under the order; and the plaintiff bid off the same for $1,400, of which he paid $500 at the time, and gave his bond to pay the balance when the sale should be confirmed. At the commencement of the present action, the sale had not been confirmed, but was confirmed by the circuit court before the trial, and the defendants herein, except *White*, appealed from the order of confirmation to the supreme court, where the cause was still pending. The whole of said debt to the plaintiff was due and still unpaid at the time of the trial herein.

The plaintiff's prayer for relief in this action was, that the moneys advanced by him to pay the debts of Frederick Shadwick might be declared a lien upon the real estate of which said Frederick died seized; that the plaintiff might be subrogated to rights of Prideaux under his said mortgages; that the satisfaction of said mortgages might be canceled, and the mortgages declared a continuing lien, etc.; that the money paid by the plaintiff to the administrator upon the sale above mentioned, as well as that remaining unpaid, might be retained until a sale should be had under the judgment in this action; and

that then such moneys might be applied in payment of any deficiency in the proceeds of the sale herein, in case said (administrator's) sale should be confirmed; and further, that said premises might be adjudged to be sold at public auction, and that the defendants and all persons claiming under them might be barred and foreclosed, etc.; and that out of the moneys arising from such sale, said debts due the plaintiff might be paid, etc.

The circuit court dismissed the complaint with costs, but without prejudice to plaintiff's right to bring another action in case the administrator's sale should be set aside; and plaintiff appealed.

*J. A. Sleeper*, for appellant:

1. The money advanced by Jones was advanced on the credit of the estate, and its payment to be secured upon the estate. If it be deemed a loan of the money to *Mrs. Hammett*, to be used in paying the debts of the estate, then *Mrs. Hammett*, by paying those debts, acquired an equitable lien on the estate which she could enforce against her co-heir. *Wilson v. Wilson*, 13 Barb. 252; *Hyde v. Tanner*, 1 id. 76; *Brown v. Bank*, 8 Met. 47; *Hubbard v. Mill Dam Co.*, 20 Vt. 402; *Roswell v. Simonton*, 2 Cart. 516; *Robinson v. Leavitt*, 7 N. H. 97; *Towle v. Holt*, 14 id. 61; *Elwys v. Thompson*, 9 Mod. 393; 1 Hilliard on Mort. (2d ed.), 371, 372; 2 Story's Eq. Jur. § 1227; 1 id. §§ 215, 477–479, 485, 486, 499–506, 564, 565. This equitable interest of *Mrs. Hammett* was a proper subject of mortgage. *Trammell v. Simmons*, 17 Ala. 411; *Neligh v. Michenor*, 2 Stockt. 539; *Parkist v. Alexander*, 1 Johns. Ch. 394. The mortgage from *Mrs. Hammett* to Jones continued the lien of these debts for his benefit, and constituted him equitable assignee of them. *Lee v. Porter*, 5 Johns. Ch. 268; 1 Hilliard on Mort. (2d ed.), 644, 645. 2. After the delivery to Jones of the Prideaux notes and mortgages, and the satisfaction pieces (the same being intended as an assignment, pursuant to

the agreement with *Mrs. Hammett*), they were valid securities in his hands, and he could assign them, as he did to Howells. The transactions between *Morgan* and Howells with the *Hammetts*, constituted *Morgan* the assignee of the Prideaux mortgages, and of the two mortgages from the *Hammetts* to Jones. Giving up the Jones notes to the *Hammetts* did not discharge the mortgages; nor would it have had that effect even if there had not been an express agreement to the contrary. *Dana v. Binney*, 7 Vt. 501; *Watkins v. Hill*, 8 Pick. 522. 3. The pendency of an action to foreclose the mortgage executed to us by the *Hammetts* furnished no reason why we should not maintain this action. That action was against the *Hammetts* alone, and the mortgage therein sought to be foreclosed covered not only the lands of which Shadwick died seized, but also lands belonging to *Hammett*, in which none of the other defendants had any interest. No facts are stated in the complaint in that action showing the right of the plaintiff to a foreclosure and sale of the whole estate as against the other defendants in this action. A judgment of foreclosure in that action would give the purchaser only *Mrs. Hammett's* undivided interest in the lands of the estate. This is an action to declare the equitable lien of *Mrs. Hammett* — her right to mortgage the estate for this money, — to foreclose the mortgage given to Prideaux and transferred to Jones and to *Morgan*, and generally to declare the estate charged with the payment of this money and interest; and, if the administrator's sale be valid, to marshal the assets in his hands and distribute them among the creditors according to their rights, having regard to priority and amount. If the sale be void, then we ask to have it so declared, and the money which has been advanced to the administrator, who represents the heirs and the creditors, returned to us, and to have our rights judicially determined and forever put to rest. It is evident that such relief cannot be granted us in that action. Beside, the objection, not having

been taken by demurrer or answer, was waived. R. S. ch. 125, § 5, subd. 3, and §§ 8 and 9. 4. The administrator's sale was no bar to this action. Does a bid at a judicial sale, before the title has passed to the purchaser, extinguish a mortgage which the purchaser holds upon the same premises, by merging it in the purchase? No merger has taken place, and if *Morgan* had actually taken a deed, equity would keep his mortgage alive if it were necessary to subserve the ends of justice. Again, if we admit that this sale effectuated a merger of the mortgage, still we are entitled to a judgment of this court distributing the assets in the hands of the administrator. We claim that we are entitled to be paid the amount of the Prideaux mortgages first out of the proceeds of this sale, and that then we are entitled to have the residue distributed *pro rata* between us and the creditor whose claim has been allowed and established since Jones loaned the money; or, if we are not entitled to have the Prideaux mortgages first paid, then, inasmuch as our money has been used to prevent a sale of the estate for debts of the decedent which have never been paid, we are entitled to a *pro rata* proportion of the proceeds with the other creditor. We represent all other claims against the estate but his, and are entitled to an equal distribution with this one. We could not obtain in the county court the relief we are entitled to. That court possesses no power to adjudicate upon the matter. When the administrator presents his account showing money in his hands, the proceeds of this sale, after paying this newly allowed debt, that court must distribute it to the heirs, all other debts having been reported paid before. But if that court would relieve us, it would be necessary for us to apply to it by petition showing the facts contained in the complaint in this action. It would be an institution of proceedings by us. This court has jurisdiction of the subject matter; and we certainly have a choice of the forum where we will prosecute our claim for relief. But it is further urged that

*Morgan* will be presumed to have bid the value of the land subject to his mortgage. He stands in the same situation here that a mortgagee does who bids at a sale upon a mortgage only equal in point of lien with his own. He may well run the estate up to its value, because he will be entitled to a *pro rata* share of the proceeds on his mortgage. He is entitled to a judgment of foreclosure and sale to perfect this doubtful title at least. The circuit court should have retained the action, and adjudged *Morgan's* equities as against these heirs. A court of equity alone is competent to that task. — Counsel further contended that the facts found by the court below show that the administrator's sale was absolutely void.

*J. H. Knowlton,* for respondents :

1. The plaintiff got by his purchase at the administrator's sale all the rights of the deceased not already belonging to him as mortgagee; and the conveyance by the administrator would merge his mortgage title, and give him a complete title to the whole estate. The sale has been confirmed by the circuit court, and that adjudication cannot be assailed collaterally in this action. The presumption is, that all proceedings subsequent to the filing of the petition for license to sell, are correct. 2. The pendency of the foreclosure suit against the *Hammetts* is sufficient to prevent the maintenance of the present suit. If it is material to plaintiff's interest to mention other mortgages than the one there sought to be foreclosed, or to get other parties before the court, that can be done by an amendment of the complaint and summons. 3. If *Mrs. Hammett* acquired an equitable lien on the whole of the real estate of the deceased by her payment of the Prideaux mortgages, and procuring their written sealed release and discharge, and if this equitable lien was the subject of mortgage, and if she did mortgage it to Jones and *Morgan,* then, by the pending suit to foreclose this mortgage, plaintiff would get the same title which he seeks in this action. 4. As to the debts against the estate which were *paid*

by the administrator, although paid with money borrowed by *Mrs. Hammett*, they were forever obliterated and discharged, and the administrator has settled his accounts as to them; or if he has not, he must, with the probate court. The creditors have not kept them alive, nor could they or the administrator keep them alive, for the benefit of the plaintiff or any one else. As to the doctrine of subrogation, see Story's Eq. Jur. §§ 493–499, 499 c, 499 d; 2 id. § 1227.

At the January term, 1863, the judgment of the circuit court was affirmed. The appellant obtained a rehearing, and the cause was re-argued by *Mr. Sleeper*, and also by *Cobb, Wilson, & Sudduth*, with *S. U. Pinney*, of counsel. They contended, among other things, that the administrator's sale, made by order of the circuit court, was clearly invalid for want of jurisdiction in the court (R. S. chap. 117, § 17; *Bloom v. Burdick*, 1 Hill, 130); and that even if that sale were valid, plaintiff would not obtain by his purchase thereat all that he is equitably entitled to and seeks in this action, viz.: (1) His rights as mortgagee of the forty acres conveyed to *Mrs. Hammett* by her father in his life-time. (2) His right to a distributive share of the proceeds of said administrator's sale, as the representative of all the creditors of the estate, except the one for the payment of whose claim said sale was made.

The following opinion, finally disposing of the cause, was filed at the June term, 1868.

COLE, J. At the former hearing of this case we thought the judgment of the circuit court should be affirmed, upon the ground that if the title which the plaintiff acquired at the administrator's sale should turn out to be a perfect one, this would furnish a sufficient answer to his application for equitable relief. We are now satisfied that this view of the case cannot be entertained upon the facts found by the court below.

For the court found that the administrator, for the purpose of raising money to pay a debt allowed against the Shadwick estate, applied in October, 1859, to the county court of Lafayette county for license to sell real estate, and that the county judge, *because he had been of counsel for some parties interested in the matter*, transferred the application to the judge of the circuit court, by whom the license was granted under which the sale was made. It is claimed that these facts show that the administrator's sale was void — the circuit judge having no power to act in the matter. An examination of the various provisions of our statute bearing upon this subject has convinced us that this view must prevail.

It is hardly necessary to remark, that when the personal estate of any deceased person in the hands of the executor or administrator is insufficient to pay all the debts, the statute has conferred upon the county court power to license the sale of the real estate upon a proper application therefor. Chap. 94, R. S. And the circuit judge is only authorized to act in hearing the application in cases where the statute disqualifies the county judge from sitting in the matter. Sections 16 and 17, chap. 117, R. S., declare when a county judge shall be deemed incapacitated from executing the duties in relation to the estate or question. By the 16th section, when the judge, his wife or child, shall be an heir or legatee, or when the judge shall be an executor or administrator of a deceased person, he shall be deemed incapacitated for executing the duties of his office in relation to that estate. And the next section of the chapter provides, that when the judge, as a creditor or otherwise, shall be interested in any question to be decided by the court, he shall be deemed incapacitated for acting in the decision of that question; and the judge of the circuit court for the same county, in such case, shall perform the duties of the judge of the county court. It will be at once seen, that the statute does not make it a ground of disqualification that the judge of the county

court has acted as counsel for parties interested in the matter. It is only when the judge, as creditor or otherwise, is himself interested in the question to be decided, that is, when he has some pecuniary interest in the matter, or where he holds a certain domestic, social or official relation to the estate or to persons pecuniarily interested therein, that the statute disqualifies him from acting. In all other cases he must perform the duties of his office, and the judge of the circuit court has no right to act for him. The judge of the county court of La Fayette county, therefore, was fully competent to sit and decide upon the application of the administrator of the Shadwick estate, and he was the proper officer to grant the license. The circuit judge had no power whatever to act under the circumstances, and the license granted by him must be treated as an order made *coram non judice*, and void. This order, and consequently the sale under it, being absolutely void, it is impossible to deny the plaintiff the relief he seeks, upon the ground that his title founded upon the sale may ultimately turn out to be perfect.

This brings us to a consideration of the question whether, upon the matters stated in the complaint and set forth in the finding of the court, the plaintiff is entitled to the relief sought. The equities of the plaintiff's case certainly appear sufficiently clear and strong to entitle him to some relief. If the administrator's sale is void, he surely should be repaid the money he has advanced upon it. And we perceive no valid reason why he should not be subrogated to the rights of Prideaux under his mortgages. The court finds that these were valid and subsisting liens when Shadwick died; and further that *Hammett* and wife applied to Jones to aid them to raise money to pay these incumbrances and other debts against the estate, representing to him that the defendant *Charlotte* was the only heir of Shadwick, and as such had inherited his property. As the result of the various trans-

actions mentioned in the finding, all the rights and interest of Jones in these mortgages, and for moneys advanced by him to the administrator to pay other debts against the estate besides those due Prideaux, have become vested in the plaintiff. He now asks to have the benefit of the Prideaux mortgages. Why should he not have the benefit of those securities? The defense set up in the answer is, that those mortgages have been satisfied and discharged by the defendant *Charlotte*, or if not paid were barred by the statute of limitations. The finding shows that Jones agreed to advance the money to Prideaux upon the understanding that these securities were to be assigned to him. It appears that Prideaux, instead of executing an assignment, as he should have done to carry out the agreement of the parties, executed satisfaction pieces thereof. He delivered over the notes and mortgages, however, and the obvious mistake of executing a satisfaction piece instead of an assignment should not prejudice the rights of assignees. So far as the statute of limitations is concerned, that certainly does not bar an action to foreclose the mortgages. After these mortgages are satisfied, the plaintiff should share with other creditors of the Shadwick estate ratably for the amount advanced to pay off the debts against that estate. It appears that when the plaintiff advanced this money, he did so believing that *Charlotte* was the sole heir of Shadwick, and this money was applied, in fact, to pay debts owing by Shadwick, and for the payment of which the estate was liable. Every principle of natural justice and equity require that these debts also be paid out of that estate. And the proposition that the heirs should receive the property of the estate relieved from the payment of this claim, is wholly inadmissible. We cannot see why the plaintiff should not have the relief asked in the complaint.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.