THE YORK AND JERSEY STEAM BOAT FERRY COMPANY
AND FRANCIS BARRETTO JUNIOR, appellants,

v.

THE ASSOCIATES OF THE JERSEY COMPANY, respondents.

Where one creditor has a mortgage of two funds, and another creditor has a subsequent mortgage of one of those funds, the first mortgagee must pursue and exhaust his remedy against the fund not mortgaged to the other, before he can subject the fund mortgaged to the other, to satisfaction.

And this principle is enforced, though there may be a question concerning the validity of the first mortgage, in respect to a part of one of the funds.

And it is also enforced, where a part of the property subject to the first mortgage, is situated in another state.

1825.
10th May.

Mortgages.

THIS was an appeal from an interlocutory decree of the judge of the first circuit in equity.

The bill was filed by the associates of the Jersey company. It stated, that by an indenture made the sixteenth day of April 1811, between the complainants of the first part, Robert R. Livington and Robert Fulton of the second part, and the several persons who should execute that indenture of the third part, the complainants demised to the parties of the third part, the Powles Hook ferry and all the complainants' right of ferriage from the city of Jersey to the city of New York, also the hotel and premises occupied by Mr. Lyon,

also room for a basin with the appurtenances, for the term of eighteen years, according to the intent of an agreement, inserted in the indenture and at a yearly rent of five thousand dollars, payable quarterly ; and that, by the fifth article of the agreement, it was provided, that if the steam boat ferry company, meaning the parties of the third part, should be incorporated, such incorporation should be taken as lessee, in lieu of the lessees intended by the indenture ; but that in such case, one only of the boats with their appurtenances, and also the whole of the wharves, pier and bridge built for their accommodation on the Jersey side, should be mortgaged for the performance of the covenants ; that the lessees procured and put in use upon the ferry, two steam boats, called the York and the Jersey ; that on the eighteenth day of March 1814, they were incorporated by the style of the York and Jersey steam boat ferry company ; and all the rights of the parties of the third part, parties to the said indenture, including the two boats with their appurtenances, were vested in the corporation : that on the fourteenth day of November 1823, the said corporation, in consideration of a permanent deduction of seven hundred dollars annually, from the rent aforesaid, released to the complainants, the hotel and appurtenances, which had been included in the said demise : that by an indenture of the fourteenth day of November 1823, a farther deduction from the rent was agreed to, and in order to secure the payment of the rent, both that which had accrued and was unpaid and that which should thereafter accrue, the said York and Jersey steam boat ferry company mortgaged to the complainants, one equal undivided half of their two steam boats and other boats with one equal half part of all their engines and apparatus, and the whole of the wharves, pier and bridge built for their accommodation at the city of Jersey, in the state of New Jersey, with their appurtenances, upon condition to be void, on payment of the rents already due, and those to become due. The bill then stated, that there is due to the complainants, after making the deductions agreed upon, a balance of upwards of four thousand three hundred dollars, for which the boats and premises mortgaged as aforesaid, are liable as security. The bill then sta-

1825.

THE YORK and JERSEY STEAM BOAT FERRY COMPANY

v.

The Associates of the JERSEY COMPANY.

59

1825.

THE YORK and
JERSEY STEAM
BOAT FERRY
COMPANY
v.
The Associates
of the JERSEY
COMPANY.

ted, that the defendant Francis Barretto Junior claims to hold a mortgage upon the said boats; charging, that such mortgage if *it exists*, is posterior in time, to that of the complainants and was taken with full notice of the same. The bill then prayed an injunction to prevent the defendants from selling or removing the boats; and that in default of payment of the sum due to the complainants, the portion of the mortgaged premises which is within the state, may be sold.

The answer of the York and Jersey steam boat ferry company admitted the material facts set forth in the bill, but alleged, that they entered into the lease under an understanding, that the complainants had a right to the ferry between Powles Hook and New York; but the former place being in the state of New Jersey and the latter in the state of New York, and the intercourse between them being a part of the commerce among the states of the union, they alleged, that congress have the exclusive right to regulate the same, and that any gift or grant of the same, by state authority, is void, and, inasmuch as the title of the complainants is derived from and under an act of the state legislature, they insisted, that the complainants had no lawful title to demise the ferry. They admit, that on the twenty fourth day of February 1824, they mortgaged the boats to the defendant Barretto, to secure the payment of sixteen hundred dollars.

The defendant Barretto in his answer, set up the same mortgage; being a mortgage upon the two steam ferry boats, their machinery and appurtenances, and upon the sail boats and row boats. He then stated, that the money, for which the mortgage was given, was advanced, in order to enable the company to carry on the ferry; and that without such advance, the same must have been discontinued; and he therefore, submitted the question, whether he ought, or ought not, to be paid before the complainants, from the sale of the boats. He then raised the question before stated, whether the grant was not void, by reason of the exclusive power of congress to regulate commerce among the states.

The cause came on to be heard before Judge Edwards, who made an interlocutory decree, that it be referred to a master, to state the amounts due to the respective parties, and

also to report the order, in which the mortgages ought to be paid.

From this decree, an appeal was entered.

The appeal now came on to be heard.

Mr. HENRY for the appellants.

1825.

THE YORK and
JERSEY STEAM
BOAT FERRY
COMPANY
v.
The Associates
of the JERSEY
COMPANY.

2nd May.

The court will take notice that the demise is void, being for the right of navigating between two parts of different states ; the regulation of which is a right vested in congress, and which right they have exercised. No other power can therefore, interfere with it ; the lease is void ; the rent is not demandable : and the mortgage falls with the rent. To pass this ferry, is a common right subject only to the regulations of congress. We cited and commented on the decision of the supreme court of the United States, and of the present chancellor, in the cause upon the steam boat question. 9 Wheat. 196. 71. 199. 200. 1 Hopk. 150. The defendants may avail themselves of this defence, although there has been no eviction. Every lease contains an implied covenant, that the demise is not void ; and this being void, is equivalent to eviction. This is void, upon the complainants' own showing ; and the rule never applies to that case, nor to a case in which, like the present, there can be no formal eviction. So when the demised premises had been taken on an extent, the defendant was allowed to plead riens in arrear. Cro. Eliz. 398.

Barretto is not a tenant. His mortgage is upon the boats only, and not upon the ferry : so that the defence on his part, is clear of these objections.

In his favor, the complainants should be required first to exhaust the other security covered by their mortgage, and not by his ; that is, the dock, &c. in New Jersey. 7 John. ch. 184. 4 Ib. 134. 19 John. 486. 492. There is great equity in this rule.

MR. HOPKINS for the respondents.

The position is not correct, that there are no means to evict the lessees, if they have no right to this ferry. The process is by writ de essendo quietum de theolonio ; which is remedial, as well as prohibitory. 1 H. Bl. 206. 4 T. Rep. 130. It lies for toll traverse as well as toll through ; for a corpora-

1825.

THE YORK and
JERSEY STEAM
BOAT FERRY
COMPANY
v.
The Associates
of the JERSEY
COMPANY.

tion on behalf of all their citizens, as well as for an individual.  F. N. B. 226 E.  It lies in favor of one whose goods are distrained for toll.  Ib.

Therefore, these lessees are estopped, till judgment on such writ, to deny the grantor's right to the premises demised.  Woodf. Land. 207. 409.  So if a man demise lands in which he has nothing,  and afterwards purchase, he shall be estopped to say that he had no estate when he made the lease.  6 Mod. 258.  Ld. Ray. 1048.  Salk. 276.  So if a man take a lease of his own lands, he shall be estopped by it.  Ib.  Therefore, in debt for rent by indenture, the defendant can not give in  evidence under nil debet, that the plaintiff had nothing, but should plead it, for then the plaintiff might reply the estoppel.  Bull. N. P. 170.  Salk. 277. Ld. Ray. 1154. 1551.  This last position applies directly, to the case before the court; for here, we state in our bill, that the lease was by indenture, which works the estoppel, as in the last case in Lord Raymond; and see 3 Lev. 146.  Until actual eviction, there can be no defence in the nature of a plea of nil habuit in tenementis.  5 T. Rep. 5.  1 T. Rep. 760. note a.  2 Ves. 696.  11  Ves. 343.  2 Sch. & Lef. 73.  2 Ves. 304.

In either way, congress may regulate the commerce and navigation between Powles Hook and New York: they do regulate it; and the lessees of the ferry  submit to the regulation.  Whenever they carry teas or spirits, for example, they conform, as other carriers do, to the laws regarding the coasting trade.  The regulation of  commerce therefore, does not interfere with the right of ferriage.  As to the regulations of navigation,  a  licensed vessel of the United States has a right to pass upon  the  waters, over which this ferry  passes: she may pass from a wharf on one side to  a wharf on the other ; but subject in  doing so, to  all private rights; for example, she can touch at my wharf,  only by my permission:  and on the same principle, she can not, without my permission, convey an article, to  the  toll of which I have a right.  These principles have been fully illustrated in the judgment of the present chancellor,  in the case of the North river steam boat company v. Livingston.  1 Hopk. 150.  In the judicial ar-

1825.

THE YORK and
JERSEY STEAM
BOAT FERRY
COMPANY
v.
The Associates
of the JERSEY
COMPANY.

guments on these questions, the case of a permit to take goods has been cited by way of illustration. Congress may authorise the granting of a permit to land goods; but may the owner land them on my ground, without my consent? Many other operations of the powers of congress are constant illustrations of the principle, that there is, and may be regulation subject to prior rights. It may also be subject to, or at least concurrent with, a state right of regulation over the same subject. Thus, congress have levied duties, upon the selling of wines and spirits, and upon sales by auction; while this state also levied like duties. But the only consequence is, that the dealers were obliged to take licences under each government. The right to this ferry is a right of property. It was included in the grant to the duke of York in the year 166¾; and virtually, in the duke's grant to Berkley and Carteret of 1664. Much learning and a very able discussion on this subject, will be found in the arguments between the commissioners of New York and those of New Jersey, in the year 1807, communicated by the governor to the legislature on the fifteenth day of February 1808.

This right of property existed anterior to the constitution of the united states; and that constitution divested no private right.

The regulations of the coasting trade, which the constitution allows, must be subject to all private and corporate rights; that is, the coasting trade must be exercised in consistence with them, and not to their destruction. If this is not so, then all ferries within the range of the coasting trade, fall under the direction of congress; who with the power of regulation acquire a right to the tolls also. On the same principle, the powers of congress destroy all rights in turnpike roads; for by the constitution, they have power to establish post offices and post roads, and that power they have exercised.

By the constitution, congress have in terms, a power to regulate commerce among the states. The supreme court seem also, to consider the right to regulate navigation, as necessarily implied in the terms of the constitution. The present chancellor seems to treat navigation, as an instrument of

1825.

THE YORK and
JERSEY STEAM.
BOAT FERRY
COMPANY
v.
The Associates
of the JERSEY
COMPANY.

commerce; and that its regulation by congress is derived from that circumstance.

The license in any case, only confers a right to do the act in such manner, time and place, as he lawfully may, having regard to all other rights. Congress have a right to carry mails; but can they pass toll free, through the gates of a turnpike company? They may doubtless license canal boats; but the boats can no more in such case, pass a lock without paying lockage, than a licensed coaster may lie at a wharf, free of wharfage. The general government may provide for the common defence, and in so doing may erect forts; but on whose land? The king of England by his prerogative, might erect them on any land: but that power is not granted to congress; and all the practice of the government is an admission of the manifest truth, that under this constitution, they must first purchase the land on which to build forts and light houses. In this most important of all powers therefore, that of defence, the government can never act, but strictly subject to prior rights.

It is apprehended, that a proper view of these subjects might have prevented much unfounded alarm, in some of the cases referred to. It certainly tends to show, that the powers of the general and state governments are much more easily reconciled, than many have supposed. But as applicable to the present case, it shows, that the regulating power of congress has not even the remotest bearing upon the right of ferriage.

As to the point made that the respondents ought first to look to the property not covered by Barretto's mortgage; that property is not in this jurisdiction. There is no case, where the court has sent a suitor to a different state or country, to pursue his remedy. The delay and vexation would here be extreme, and the proceeding useless; as the property in New Jersey is in fact, of very little value. There is little equity in favor of such a claim. The second mortgagee acted with perfect knowledge of the first lien. He is a volunteer, who knowingly advanced his money, in a way to embarrass our remedy. It is very different, when the prior mortgage was unknown.

Mr. Henry in reply.    There can be no estoppel on a
lease which on its face, is void.    The landlord destroys it,
by his own showing.    The waters of the Hudson are common
to all.    The use is common.    Then, there is no one to bring
the writ de theolonio non capiendo.    There can therefore, be
no eviction.

1825.

The York and
Jersey Steam
Boat Ferry
Company

v.

The Associates
of the Jersey
Company.

Chief justice Marshall says that " commerce is traffic ;" but
it is something more ; it is intercourse.    " The mind can
" scarcely conceive a system for regulating commerce which
" shall exclude all laws concerning navigation." Gibbons
v. Ogden.    If this intercourse is to take place by a ferry,
congress may regulate it.    They therefore regulate the tran-
sit of persons, by whom the intercourse is to be carried on,
or if they leave it unregulated, it is free of course.

But what are the other rights demised, without the right of
taking passengers ?  It would be void at least, pro tanto, and
might be apportioned.

Whatever right of regulation the state had, was given up
by the constitution.    Can the state now grant a right of fer-
riage from this state to another ?   Can it tax or restrain that
intercourse which congress alone can regulate ?  In the case
of Gibbons v. Ogden, it was equally attempted to put the
right upon the ground of a ferry.

The license of congress can never be taken subject to all
previous rights ; for those rights might subvert the license it-
self.   They would do so, in this case.   Congress allow you
to pass freely, from New Jersey to New York.   This state
tax the transit.  The two things are inconsistent.

The idea of a power to regulate in congress, to be exer-
cised concurrently, with a like power in the states, is fully
considered and is refuted in the opinion of the supreme court
of the united states, in the case referred to.    " It has been
" contended" says chief justice Marshall, " that as the word
" regulate implies in its nature, full power over the thing to
" be regulated, it excludes necessarily, the action of all oth-
" ers, that would perform the same operation on the same
" thing ; that regulation is designed for the entire result, ap-
" plying to those parts which remain as they were, as well as
" to those which are altered.   It produces a uniform whole.

1825.     " which is as much disturbed and deranged, by changing

THE YORK and " what the regulating power designed to leave untouched, as
JERSEY STEAM " that on which it has operated.   There is great force in this
BOAT FERRY " argument, and the court is not satisfied, that it has been
COMPANY
v.        " refuted."
The Associates
of the JERSEY    This case is not like a turnpike, which is a mere facility,
COMPANY.
not a regulation of commerce ; nor like the case of auctions,
where the right is concurrent ; nor like the case of fortifica-
tions, where there is an absolute dominion.

Suppose there were a previous exclusive state grant for car-
rying goods on the Hudson ; could not congress, since the
constitution, regulate that transportation ?  We do not con-
tend for a power to divest rights or trench upon property.
Here both parties alike knew the law :  they can not contract
against the laws.

The respondents ought to elect their remedy against the
property not covered by the mortgage of Barretto.   It is
against all reason and moral obligation, that they should not.
That property appears from the answers to be considerable
in value.   The mortgage of the appellant Barretto, should
be paid, in preference to that of the respondents.

THE COURT gave its opinion, to the following effect :

If the ferry were the only subject mortgaged to the associates
of the Jersey company, the court would find it necessary to
determine the question of constitutional law, which has been
so fully argued.   But the subjects of this mortgage are the
one half of two or more boats, with their machinery, and the
whole of certain wharves, a pier and a bridge with their ap-
purtenances, situated in the state of Jew Jersey.   These
mortgaged subjects may probably, be more valuable, in con-
nexion with an exclusive right of ferry, than without such a
right ; but the boats and the lands undoubtedly, have value,
whether the exclusive right of ferry now contested, is valid or
void.   If there is no exclusive right of ferry, this mortgage
may be void, in that respect ; but it is still valid, as to the
lands and the boats ; and as the cause now stands, it does not
appear, that the lands and the boats are not of sufficient value,
to satisfy both these mortgages.   The lands alone, may be

sufficient to satisfy the mortgage to the associates of the Jer-    **1825.**
sey company : and it is unnecessary in the present state of the
cause, to express any opinion concerning the exclusive right    THE YORK and
of ferry.                                                        JERSEY SPEAM
                                                                 BOAT FERRY
The York and Jersey steam boat ferry company mortgaged    COMPANY
the boats and lands to the associates of the Jersey company    The Associates
in November 1823: and in February 1824, they mortgaged    of the JERSEY
the boats to Barretto.                                       COMPANY.

This then, is in substance, the ordinary case, in which a
creditor has a lien on two funds, and another creditor has a
posterior lien on one of the same funds. In such cases, equi-
ty requires, that the creditor who is secured by two funds,
shall first resort to that fund, which is not bound to the other
creditor, in order that the other may receive the benefit of his
single security, so far as may be practicable. This principle
so obviously just, is fully established ; and two cases will suf-
ficiently show; that it has been adopted and enforced by our
own courts. Evertson against Booth, 19 John. 486.; and
Hays against Ward, 4 John. ch. 123.

It is objected, that the fund mortgaged to the associates of
the Jersey company and not mortgaged to Barretto, is in the
state of New Jersey. But it is nevertheless, in the power of
the mortgagees to pursue and exhaust their remedy in that
state: and in the case of Hays against Ward, the late chan-
cellor suspended the proceedings of a creditor, until a mort-
gage of lands in another state, should be pursued and ex-
hausted.

The order of the circuit court does not give effect to this
principle ; and it must be so modified, that the associates of
the Jersey company shall be compelled to proceed in the first
instance, against the property not mortgaged to Barretto.
In the existing posture of the cause, no other direction to the
circuit court is necessary.

The following decree was entered.

This cause having been brought into this court, by an ap-
peal entered therein by the appellants above named, from an
interlocutory decree of the circuit court for the first circuit,
made on the fifteenth day of March last ; having been argu-
ed in this court, on the second and third days of May instant,

by Mr. HENRY of counsel for the appellants, and Mr. HOP-KINS of counsel for the respondents; and having been duly

considered; this court is of opinion, that the associates of the Jersey company are bound in equity, to proceed against that portion of the property mortgaged to them, which is not mortgaged to Francis Barretto Junior, and is situated in the state of New Jersey, and to exhaust their remedies against that portion, before they can subject the portion, which is mortgaged to Francis Barretto Junior, to the satisfaction of the debt due to them : and it is adjudged and decreed, that all proceedings in this cause, on the part of the associates of the Jersey company as complainants, be suspended, until it shall appear, that they have proceeded against that portion of the property mortgaged to them, which is not mortgaged to Francis Barretto Junior, and have exhausted their remedies against that portion ; that when it shall appear, that the associates of the Jersey company have so proceeded and exhausted their remedies, if any debt or balance shall remain due to them, this suit shall proceed in the usual course, to enforce payment of any such debt or balance ; and if the associates of the Jersey company shall not pursue and exhaust their remedies against the property not mortgaged to Francis Barretto Junior, with reasonable diligence, this suit shall be dismissed : and this cause is remanded to the circuit court, for such farther proceedings, as may be had, in conformity to this decree.