JOSEPH C. EVERSTON v. THE CENTRAL BANK OF KANSAS.

1. FORGED MORTGAGE; *Subrogation.* Where money is loaned upon the security of what is supposed to be a valid mortgage, but which in fact is a forged and void mortgage, and the money is so loaned for the purpose that a prior valid mortgage may be discharged, which is done, the mortgagee of the void mortgage may be subrogated to the rights of the prior mortgagee, there being no intervening liens or incumbrances.

Statement of the Case.

2. Void Mortgage—*Innocent Purchaser.* And in such a case, where the mortgagee of the void mortgage assigns the same in the regular course of business to an innocent purchaser, such innocent purchaser takes the place of the mortgagee of the void mortgage, with all his rights of subrogation.

*Error from Butler District Court.*

The findings of fact and conclusions of law made by the district court at the January Term, 1884, upon the trial of this case, read as follows:

FINDINGS OF FACT.

"*First:* On the first day of January, 1881, William DeMoss was the owner of the S. W. ¼ of section 10, township 28 south, of range 4 east, in Butler county, Kansas; and on that day, with his wife, executed and delivered to the Hartford Life and Annuity Insurance Company a mortgage on said land, to secure the payment of the sum of three hundred dollars five years thereafter, and interest thereon at the rate of nine per cent. per annum from said date.

"*Second:* Afterward, and on or about the 24th day of March, 1881, one S. M. LeMoines, without the authority, knowledge or consent of DeMoss or his wife, caused to be forged and placed upon record in the office of the register of deeds of Butler county, Kansas, a deed purporting to be a conveyance of said property from said DeMoss and wife to Charles F. Himes, defendant herein.

"*Third:* Afterward, and on the 15th day of April, 1881, the said LeMoines caused to be forged a mortgage upon said property purporting to have been executed by said Himes and his wife to A. Prescott, one of the original defendants herein, to secure the payment of the sum of six hundred dollars and interest thereon from April 15th, 1881, at eight per cent. per annum, and presented said mortgage and a negotiable note for said sum purporting to be executed by said Himes and wife, and secured by said mortgage, as the genuine note and mortgage of said Charles F. Himes and wife, and procured the said Prescott to loan the sum of six hundred dollars thereon. The said Prescott, believing said note and mortgage to be genuine, and that said Himes had good title to said property, and on the faith thereof, loaned said sum of six hundred dollars thereon, and, as a part of said loan, advanced and paid the said Hartford Life and Annuity Insurance Company the sum of —— dollars in full payment and discharge of said insur-

23—33 KAS.

ance company's said mortgage, and procured a release and discharge of said insurance company's mortgage to be made and entered of record in the office of said register of deeds on the 9th day of June, 1881. The said mortgage from Himes and wife to Prescott was entered of record in said office of register of deeds, on the 27th day of April, 1881.

"*Fourth:* The Central Bank of Kansas, defendant, became the owner of said Prescott mortgage by assignment in the regular course of business, and in good faith, prior to the commencement of this action; but when the defendant Central Bank of Kansas became the owner of said mortgage it did not purchase the same relying upon any right of subrogation to the rights of the Hartford Life and Annuity Insurance Company, but believing said mortgage was genuine and valid. Neither said Prescott nor said defendant bank had notice of said forgeries, prior to the commencement of this action. The said Prescott was not guilty of negligence in making said loan, or in the payment of said insurance company mortgage.

"*Fifth:* A conveyance of said property was made by said Himes and wife to the present plaintiff, Everston, on the 26th day of July, 1882, and a quitclaim deed of the property was made by DeMoss and wife to Everston on the 28th day of March, 1883. In purchasing the property from Himes, the plaintiff, Everston, relied upon the assurance of Himes that the mortgage purporting to have been made by Himes to Prescott was a forgery and void. When the plaintiff, Everston, purchased and received the conveyance of said property from DeMoss, he knew the pretended deed from DeMoss and wife to Himes was a forgery. This action was commenced on the 28th day of July, 1882.

"*Sixth:* Neither the original plaintiff, DeMoss, nor the present plaintiff, Everston, have ever paid any part of the principal or interest secured by the insurance company's mortgage, either to said insurance company, or to said Prescott, or to the defendant bank. No part of the money so advanced and paid by Prescott to pay off and discharge said insurance company's mortgage has ever been repaid, either to Prescott or to defendant bank.

"*Seventh:* Prior to the commencement of this action, by the terms of said insurance company's mortgage several installments of interest had fallen due thereon, and by the terms of said mortgage the whole indebtedness secured thereby became due at the option of the holder thereof upon the non-payment of any interest."

CONCLUSIONS OF LAW.

"*First:* The said Prescott advanced the money and paid and secured the release and discharge of said insurance company's mortgage by reason of an innocent mistake of fact, and upon the belief that such payment was necessary to protect an interest of his own in the property, and not as a mere volunteer, and became thereby entitled to be subrogated to the rights of the Hartford Life and Annuity Insurance Company; and that such right of subrogation passed by assignment of said mortgage to all subsequent holders thereof.

"*Second:* When the plaintiff Everston became the owner of said property, he was charged with constructive notice of the rights of said Prescott and his assignees in the property, whatever those rights were.

"*Third:* The defendant Central Bank of Kansas is entitled, by subrogation, to be substituted to the rights of the Hartford Life and Annuity Insurance Company and its mortgage lien in and upon the property to secure the repayment of the sum of money due upon said insurance company's mortgage and paid by said A. Prescott, and interest on the amount so paid from the date of such payment to the present time, at the rate of seven per cent. per annum."

Judgment was rendered in accordance with these findings and conclusions. The other facts of this case are sufficiently stated in the opinion of the court. Everston brings the case here.

*A. L. Redden,* and *T. O. Shinn,* for plaintiff in error.
*Peck, Johnson & McFarland,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Butler county, on July 28, 1882, by William DeMoss against Charles F. Himes, Jane Himes his wife, and A. Prescott, to quiet DeMoss's title to certain real estate owned by him, and to have a certain supposed deed and supposed mortgage thereon declared null and void. While the suit was pending in the district court, DeMoss disposed of all his interest in the property in controversy to Joseph C. Everston, and A. Prescott died; and Everston was then substituted as

plaintiff in the action in the place of DeMoss, and the Central Bank of Kansas, the owner of said mortgage and the supposed successor in interest to Prescott, was substituted as a defendant in the action in the place of Prescott. All the defendants answered. The Central Bank filed an elaborate answer, setting forth facts sufficient to authorize all the proceedings afterward had, and the judgment afterward rendered by the court below in favor of the bank, provided the decision of the court below with regard to the ultimate rights of the parties is correct.

It appears that on January 1, 1881, DeMoss, being the owner of the land in controversy, gave a mortgage thereon to the Hartford Life and Annuity Insurance Company to secure the payment of $300. Subsequently, Prescott, on the faith of a supposed deed from DeMoss to Himes, and a supposed mortgage from Himes to himself on said land, loaned $600 thereon, and out of said loan paid off the mortgage held by the insurance company, and procured a release of record of the same. The deed from DeMoss to Himes, and the mortgage from Himes to Prescott, were forgeries. The bank became the owner of the mortgage to Prescott and of the notes secured by the same by assignment, in the regular course of business, in good faith, and before the commencement of this action. Everston obtained a warranty deed to the land from Himes two days before the commencement of this action; and some eight months thereafter he obtained a quitclaim deed to the land from DeMoss, having at the time full notice of all the rights and claims of Prescott and his assignees in and to the land. No part of the money advanced by Prescott has ever been paid. The case was tried before the court without a jury, and the court, after making special findings of fact and conclusions of law, rendered its judgment subrogating the bank to all the rights of the insurance company, including its mortgage lien, and decreed that the bank should have a lien on the premises for the amount of the insurance company's mortgage, which Prescott had paid, with interest from the date of such payment at 7 per cent. per annum, and ordered that the property be sold to satisfy this judgment. The only question now pre-

sented to this court is, whether the bank, under the facts of this case, is entitled to be so subrogated.

It is claimed by the plaintiff, Everston, that such subrogation cannot be had: First, for the reason that Prescott himself, if he had continued to hold the mortgage which he took from Himes, would not be entitled to such subrogation; second, that even if such right of subrogation existed in favor of Prescott, it could not be transferred in any manner to the bank, and was not so transferred either in law or equity. We shall consider these questions in their order.

I. We do not understand that the plaintiff, Everston, claims that he is entitled to any more or greater rights in or to the property in controversy than the original plaintiff, DeMoss, would be entitled to were he still the owner of the land and the plaintiff in the action; and we think it is clear that Everston has no more or greater rights than DeMoss had, but has merely succeeded to the rights of DeMoss. The only title which Everston has acquired to the property was through De-Moss, by a quitclaim deed from DeMoss and wife eight months after this action was commenced, and during the pendency of the action, of which he was bound to take notice. In the case of *Smith v. Dunton*, 42 Iowa, 48, it is held that "a purchaser who takes by quitclaim deed is affected by prior equities. He is not protected as a *bona fide* purchaser for value." As to *lis pendens*, see *Dresser v. Wood*, 15 Kas. 344, 358.

The rule of "subrogation," or in other words, the rule of "equitable assignment," (3 Pomeroy's Eq. Jur., § 1211, and note 1,) has been variously defined by courts and authors. The definitions have usually been just broad enough to meet the particular case under consideration, and not sufficiently broad to cover all the cases which might properly come within the rule. Of course, subrogation is never applied in aid of a mere volunteer, nor where it will defeat equity, nor where a valid express assignment or transfer of the debt or claim has been made; but, with these exceptions, and as Mr. Sheldon, in his work on Subrogation, § 1, says:

"It is broad enough to include every instance in which one

party pays a debt for which another is primarily answerable, and which in equity and good conscience should be discharged by the latter."

Judge Story, in the case of *Bright v. Boyd*, 1 Story (U. S. C. Ct.), 478, 498, uses the following language:

"There is still another broad principle of the Roman law, which is applicable to the present case. It is that where a *bona fide* possessor or purchaser of real estate pays money to discharge an existing incumbrance or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner, seeking to recover the estate from him."

In the present case, DeMoss was the only person primarily liable for the payment of the insurance company's mortgage. His land was pledged for its payment. In equity and good conscience he and he alone should have discharged it. But Prescott paid it, through an honest mistake of fact and upon the belief that such payment was necessary to protect an interest of his own in the property, and without any knowledge of the infirmity in his own mortgage, or of the infirmity in the title of Himes to the land; and it would now be inequitable and unjust to permit DeMoss to reap the benefit of Prescott's payment, and to recover the land without repaying Prescott or his assignee anything. The case comes squarely within the rule as laid down by Mr. Sheldon and Judge Story. No injury is done to DeMoss by requiring him to pay what he ought to pay; on the other hand, to permit him to reap the benefit of payment made by Prescott, without repaying Prescott or his assignee anything, would be a gross injustice. Of course the rule of subrogation is not to be applied in favor of one who has officiously and as a mere volunteer paid the debt of another; but Prescott, in paying off this mortgage to the insurance company, was not acting officiously, and was not a mere volunteer within the meaning of that term as applied to this class of cases, and the court below so found. Prescott paid the insurance company's mortgage under a *mistake of fact* as to his rights and interest in the land; and he paid the same under a colorable obligation to do so, and for the purpose of

protecting his own supposed claim; and in such case, he is entitled to be subrogated to the rights of the insurance company. (1 Jones on Mortgages, § 874.) With respect to money advanced on defective mortgages, the doctrine is expressly laid down by Mr. Sheldon as follows:

"Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances." (Sheldon on Subrogation, § 8.)

For additional authority upon the right of subrogation, see also: *Gilbert v. Gilbert*, 39 Iowa, 657; *Levy v. Martin*, 48 Wis. 198; *Snelling v. McIntyre*, 6 Abbott's New Cases, 469; *Carter v. Taylor*, 3 Head, 30; *Muir v. Berkshire*, 52 Ind. 149; *Neely v. Jones*, 16 W. Va. 625; same case, 37 Am. Rep. 794; *Ayres v. Probasco*, 14 Kas. 177, 198.

The cases are quite numerous where a party loaning money on a defective mortgage to take up a prior valid incumbrance has been subrogated to the rights of the holder of the prior incumbrance; and it seems to us that the doctrine of those cases and the rule laid down by Mr. Sheldon, as above quoted, are directly applicable to this case. Prescott loaned the money on a defective mortgage to take up a prior valid incumbrance, and the money was so applied, and therefore we think he is entitled, under the equitable doctrine of subrogation, to be substituted to the rights which the insurance company had by virtue of its mortgage. We have examined all the cases cited by counsel for the plaintiff, and we do not think that any one of them conflicts with the views herein expressed. The plaintiff, however, especially relies upon the case of *Watson v. Wilcox*, 39 Wis. 643. In that case, Watson voluntarily loaned money to George and Margaret Harvey, and took a mortgage from them to secure the loan, all parties intending that the Harveys should, with a portion of the money loaned, pay off and discharge a prior mortgage on the property to Sarah Ann Hodson, which afterward they did. Watson got his security,

all that he asked for or desired, and for the entire amount of money which he loaned, and, such security never failed, and was never impaired. Under such circumstances, it was held by the supreme court of Wisconsin that Watson could not be subrogated to the rights of Sarah Ann Hodson. Now whether this case was decided correctly or erroneously, it certainly does not conflict with the views which we have expressed in this opinion. In the present case, the security to Prescott, though at the time supposed to be valuable, was afterward found to be worthless. Besides, as sustaining the views which we have expressed in this opinion, see the following cases decided by the supreme court of Wisconsin: *Morgan v. Hammett,* 23 Wis. 30; *Blodgett v. Hitt,* 29 id. 170; *Winslow v. Crowell,* 32 id. 642; *Mo´ir v. Tulip,* 40 id. 66; *Levy v. Martin,* 48 id. 198.

It can make no difference that the negotiations respecting the loan and the payment of the insurance company's mortgage were not had with DeMoss. DeMoss, or his grantee, whose rights are no greater than his, is seeking by this action to take and hold the benefit of the payment made by Prescott. He cannot take the benefits of such payment without also assuming the obligations and liabilities which follow it. He avers in his pleading that the mortgage has been paid off and satisfied; and he claims all the rights which would accrue to himself by virtue of such payment and satisfaction. This is a satisfaction of such payment to the extent that his liability by reason thereof is the same as though such payment had been made at his instance and request in the first instance. (*Neely v. Jones,* 16 W. Va. 625; same case, 37 Am. Rep. 794.)

II. It is further claimed that Prescott's right to be subrogated, if it existed, would not pass to the defendant in error by the assignment of the forged note and mortgage. No good reason can be suggested why this is so. It is insisted that the right of subrogation cannot be assigned or transferred at all; even if it can, still that there must be an actual assignment but specifically intended at the time to be an assignment of the cause of action arising by reason of the right of subrogation. Possibly these positions might be sound if the cause of action

were purely a legal one, but equity permits no such technical rule to defeat substantial justice.     Equity looks at the substance of things, and not merely at forms.     Is it equitable to all parties, that the defendant in error should be treated as having succeeded to the rights of Prescott?     Will the same result in any injury to anyone?     The first of these questions must be answered in the affirmative, and the second in the negative.     After the bank took the note and mortgage from Prescott and paid him therefor, Prescott had no equitable claim to be subrogated to the lien of the insurance company, because he had been repaid the money he had paid out to satisfy its mortgage.     He was then out nothing, and could claim nothing. He was then not the real party in interest.     Prior to the transfer of the note and mortgage to the bank, the plaintiff was bound to repay Prescott, because it was not equitable or just that he should take the benefit of the payment made by Prescott without reimbursing him.     Would it be any more equitable or just that he should receive the benefit of such payment because some one else had assumed Prescott's place and would suffer the loss?     The plaintiff cannot complain that it would work any injustice to him to hold that the bank has succeeded to Prescott's rights.     No one can claim the right of subrogation, if the bank cannot.     The plaintiff ought to pay some one, and the only one who can equitably make a claim upon him, or to whom he can be bound, is the bank. Again, the bank, as the indorsee of Prescott, would have the right to sue Prescott, as indorser, for the money paid for the note and mortgage, and Prescott, as the original payee, would, upon payment to his indorsee of the money he had received, be again reinvested with the right of subrogation to the insurance company's lien, and could then maintain a suit thereon. What can be done indirectly can be done directly.     Especially is this true in equity, when thereby, as in this case, a multiplicity of suits is avoided, equity is done to all the parties, and the same result is accomplished that would follow a circuity of action.

The rule in such a case as this undoubtedly is that the real

party in interest, whether he is the person who originally paid the money or some other person standing in the same relation to the parties and the subject-matter that the first party originally occupied, can maintain the suit, if thereby the rights of other persons are not prejudiced, and if he is the only person who can maintain the suit. (Civil Code, § 26.) In this connection, see *Seller v. Lingerman*, 24 Ind. 264; *Muir v. Berkshire*, 52 id. 149.

We perceive no error in the rulings or judgment of the court below, and therefore its judgment will be affirmed.

All the Justices concurring.