THE EQUITABLE MORTGAGE COMPANY v. JOHN W. LOWE *et al.*

1. SUBROGATION, *When Proper.* Where a mortgagee or creditor holds security upon two properties or funds, with perfect liberty to resort to either for the payment of his debt, and another mortgagee or creditor holds a junior security upon only one of these properties or funds, equity will compel the former mortgagee or creditor to exhaust the property or fund upon which he alone has security before coming upon the latter property or fund, and thereby depriving the latter mortgagee or creditor of all of his security.

2. JUDGMENT — *Review — Parties in Supreme Court.* Where a judgment cannot be disturbed or reversed without affecting all of the defendants in the court below, all of such defendants must be made parties in the supreme court upon proceedings in error, to have the case disposed of upon its merits.

*Error from Phillips District Court.* .

On the 3d day of May, 1889, *The Equitable Mortgage Company* commenced its action against *John W. Lowe,* Josiah Mitchell, the Mortgage Trust Company of Pennsylvania, the Kansas Trust and Banking Company, of Atchison, and others, to be subrogated to four mortgages, aggregating $934.13, which it had paid off upon certain premises in Phillips county. Trial had at the January term of the court for 1890, before the court without a jury. It is agreed by all the parties that the evidence introduced upon the trial established the following facts:

"That on or about the 1st day of January, 1889, the defendant John W. Lowe applied to the plaintiff for a loan of $3,500, upon the real estate described in plaintiff's petition; that said Lowe falsely and fraudulently represented to plaintiff that he, the said Lowe, was the owner of all of said real estate at that time, and that there were no mortgages or liens of any kind upon any part or parts of said real estate, except the four mortgages on the southeast quarter and southwest quarter of 33–5–18, which were afterward paid off by the plaintiff, as alleged in its petition; that at the time said Lowe applied for said loan he sent to the plaintiff, at its office in Kansas City, Mo., a false, fraudulent and forged abstract of title to said real estate, purporting to have been made, compiled and certified to by Norton & Crandall, abstracters, of Phillipsburg, Kas.; that said abstract was not compiled by said Norton & Crandall, but was a forgery; that said false and forged abstract of title showed the title of said real estate to be vested in the said Lowe, and, as appeared from said fraudulent abstract, there were no mortgages or liens of any kind upon said real estate except the four mortgages upon the southeast quarter and southwest quarter of 33–5–18, which the plaintiff afterward paid off; that the plaintiff, relying upon the condition of the title to said real estate as disclosed by said forged abstract, and fully believing the title to said real estate to be in truth and in fact as represented by said abstract, agreed to loan to said Lowe $3,500 on said real estate; that on the 21st day of January, 1889, the said Lowe executed what purported to be a first mortgage upon said real estate to secure the said $3,500; that on the 7th day of February,

1889, the plaintiff received from said Lowe what purported to be a receipt from the register of deeds of Phillips county, Kansas, showing that there had been filed for record in said office a mortgage for $3,500, on said real estate, executed by said Lowe and wife and in favor of the plaintiff; that on the 8th day of February, 1889, the plaintiff, relying upon the showing as made by said fraudulent abstract and register's receipt, as above stated, advanced the sum of $934.13 as a part of said $3,500 loan for the purpose of paying off and discharging the four mortgages, as alleged in plaintiff's petition, said sum being sent by the plaintiff directly to the owners of said mortgages in New York city, said mortgages being thus fully paid off, discharged, and satisfied; that said register's receipt was a forgery; that the defendant Elizabeth M. Lowe did not sign the said $3,500 mortgage or notes, her name and that of the notary to the same being a forgery; that the title to said real estate was not as represented by said fraudulent abstract; that there were in fact a number of mortgages upon various parts of said real estate aside from and in addition to the four mortgages paid off by the plaintiff; that the Kansas Trust and Banking Company, the Mortgage Trust Company of Pennsylvania and the Nebraska and Kansas Farm Loan Company held mortgages on said southeast and southwest quarters of section 33–5–18, as alleged in their pleadings, but that the four mortgages paid off by the plaintiff were prior and superior to the mortgages of any of the defendants or any other parties; that the mortgages of the Kansas Trust and Banking Company and Mortgage Trust Company of Pennsylvania were prior to the mortgages of the Nebraska and Kansas Farm Loan Company; that the mortgages from Lowe to the plaintiff were junior and inferior to the mortgages of the defendants; that in said fraudulent abstract there appeared a deed purporting to convey the said southeast quarter of section 33–5–18 from the defendant Josiah Mitchell to the defendant John W. Lowe; that said pretended deed was a forgery, and that the title to said southeast quarter of section 33–5–18, vested in the said Josiah Mitchell, subject to the mortgages paid off by plaintiff and the mortgages of defendants above stated; that the mortgages of defendants were all properly recorded, and had been properly of record from the times mentioned in the pleadings, and were and are in full force and effect at the time the plaintiff advanced said $934.13, but that the plaintiff, at that time, had no actual

notice of the existence of any of said mortgages, and no notice or knowledge of the forgery and fraud above stated; that no part of said $934.13 has ever been repaid to plaintiff by said Lowe or anyone; that the defendant John W. Lowe, for several years prior to the 8th day of February, 1889, had been engaged in business at Phillipsburg, Kas., as a loan agent, and as such had negotiated from the defendants the Kansas Trust and Banking Company and the Nebraska and Kansas Farm Loan Company the mortgages, as alleged in their pleadings, by means of false and fraudulent abstracts of title, which said false abstracts did not show any of the four mortgages which the plaintiff afterward paid off, although said four mortgages were at that time valid and existing liens upon said premises, as shown by the records of said county; that said abstracts so furnished to defendants were relied upon by said defendants as genuine, and showed title to said land in mortgagors free from incumbrance; that when the said Lowe negotiated the loan from the Kansas Trust and Banking Company, for the said Josiah Mitchell, the said Mitchell authorized Lowe to receive from the loan company the full amount of said loan, which amount was actually remitted by the Kansas Trust and Banking Company, and, by the authority and direction of the said Mitchell, the said Lowe retained in his possession a sufficient amount of said money to fully pay off the two mortgages on said southeast quarter of 33–5–18, which the plaintiff afterward paid off, and the said Mitchell directed and authorized the said Lowe to pay off said mortgages, but the said Lowe failed to do so; that said money was thus left with Lowe in February, 1887, and that the said Mitchell never examined the records, or inquired of Lowe or anyone as to whether said mortgages had been paid off by Lowe or not, until in May, 1889; that the said John W. Lowe, for some time prior to January 1, 1889, had been engaged in the loan business in company with one A. P. McElroy under the firm name of McElroy & Lowe; that said firm had been negotiating loans for different parties with a number of loan companies, the plaintiff among others; that the plaintiff, in its correspondence in relation to the loan being made to defendant Lowe, directed all of its letters to the said A. P. McElroy, at Phillipsburg, Kas.; that said A. P. McElroy was not in Phillipsburg at the time, having removed to Osborne, Mo., in the fall of 1888. The said McElroy never received any of said letters. The plaintiff did not know at that time that McElroy was not in Phillipsburg, but believed that said

McElroy & Lowe were both present in Phillipsburg, and were partners in the law and loan business.

"The defendant Lowe, in applying for said loan, executed an instrument and sent to plaintiff, appointing the said McElroy his attorney in fact to negotiate for him said loan; that the mortgages from Lowe to the plaintiff were, on the 6th day of April, 1889, by said Lowe deposited in the office of the register of deeds of said county for record, and said mortgages were then duly recorded; that said $3,500 mortgage was not filed in said register of deeds' office on the 6th day of February, 1889, as represented by the fraudulent register's receipt above mentioned; that the plaintiff received the real-estate bond, coupons and notes set out in its petition on the 7th day of February, 1889, but the mortgages from Lowe to plaintiff were not actually received by the plaintiff until the 11th day of April, 1889, at which time they were delivered to plaintiff by the register of deeds of said county, after they had been recorded as above stated; that the plaintiff sent its agent, J. F. Coburn, to Phillipsburg, Kas., on the 10th day of April, 1889; that the defendant Lowe left Phillipsburg, Kas., on the night of the 11th day of April, 1889; that the mortgages held by defendant the Nebraska and Kansas Farm Loan Company, on the southwest quarter of 33–5–18, purporting to have been executed by defendant Josiah Mitchell, were forgeries; that the said Mitchell had been in possession of said southeast quarter of 33–5–18 for more than two years prior to January 1, 1889, and up to and including the time of trial; that the mortgages and notes set out in the cross petitions of the Kansas Trust and Banking Company and the Mortgage Trust Company of Pennsylvania were genuine and valid instruments."

The trial court found the issues generally against the Equitable Mortgage Company, and further found that the company was not entitled to subrogation as prayed for in its petition. The company filed its motion for a new trial, which was overruled. It excepted, and brings the case here.

*Frank McKay,* and *Rossington, Smith & Dallas,* for plaintiff in error:

The question presented to the court is, whether or not, under the facts narrated, the court below erred in refusing to sustain plaintiff's claim of subrogation. There can

be no question that such right existed as between Mitchell and the plaintiff. The case as to him is exactly analogous to that of *Everston v. Central Bank*, 33 Kas. 352.

In the light of the decisions of this court and of most of the courts of the United States, the plaintiff cannot, in any proper sense of the term, be said to be a mere intermeddler or volunteer, and when a prior mortgage or judgment by fraud or wrong has been discharged of record, as in this case, subsequent mortgagees, whose rights existed at the time of such discharge, cannot claim to be prejudiced by the setting aside of such discharge and the restoration to the judgment creditor or mortgagee of all rights under such prior incumbrance. It is this principle which we invoke in this case, and which should sustain our contention.

Some contention seems to be made in the record that the original mortgages held by the defendant companies were likewise procured through fraud upon the part of Lowe; but it appears that such fraud consisted in the suppression of the existence of the prior mortgages, which the plaintiff subsequently paid off upon this property, and that the loans were made at the procurement of Lowe by these companies in the belief that they were then acquiring a first lien upon the property. The proceeds of the loan, however, were paid over to Lowe, as the agent and representative of the borrower, and, of course, with no understanding or agreement that the money should be applied in the clearing of title. See *Crippen v. Chappel*, 35 Kas. 499; *Yaple v. Stephens*, 36 id. 680; *Bright v. Boyd*, 1 Story, 478–498.

The case of *Emmett v. Thompson*, a Minnesota case, reported in 52 N. W. Rep. 31, is analogous to the one at bar. We refer to the following cases, as bearing upon the questions involved: *Snelling v. McIntyre*, 6 Abb. (N. Y.) 469; *Haggerty v. McKenna*, 25 N. J. Eq. 48; *Millholt v. Tiffany*, 64 Md. 455; *Levy v. Martin*, 48 Wis. 198; *Gilbert v. Gilbert*, 39 Iowa, 657; *Fears v. Albea*, 69 Tex. 437; *Swift v. Kraemer*, 13 Cal. 530; *Hobgard v. Schuller*, 10 S. Rep. 812; *Twombly v. Cassidy*, 82 N. Y. 155; *Gaus v. Thieme*, 93 id. 225; *Na-*

*tional Bank v. Werts,* 26 Fed. Rep. 294; *D. F. & M. Ins. Co. v. Aspinwall,* 48 Mich. 289; *Gillette v. Hill,* 102 Ind. 531.

*H. M. & W. A. Jackson,* for defendants in error the Kansas Trust and Banking Company and the Mortgage Trust Company of Pennsylvania:

The court below rightly held that the plaintiff was not entitled to the subrogation claimed, or to resort to the only estate to which these two defendants could resort, and thus leave these defendants without security, or with a second or inferior lien, and at the same time leave the 480 acres of lands included in the mortgage to plaintiff, which was otherwise unincumbered, for the benefit of Lowe or persons to whom he might transfer such land. The court below rightly found that such claim was in violation of the well-established equity principle, that a party having two estates to which it can resort, to one of which estates other parties have claims, will be prohibited from satisfying its claim out of the estate to which only the junior incumbrancer could resort. Sheld. Sub., § 61; *Y. & J. S. F. Co. v. Associates of Jersey Co.,* 1 Hopk. Ch. 460.

This case is brought squarely within the exception to the general principle stated in the case of *Everston v. Central Bank,* 33 Kas. 352, in which the court says Prescott was justified in the payment of the prior mortgage, because paid "through an honest mistake of fact, and upon the belief that such payment was necessary to protect an interest of his own in the property, and without any knowledge of the infirmity of his own mortgage, or of the infirmity in the title of Himes to the land."

Subrogation is never allowed where it will work injustice to others. *Kusaf's Appeal,* 91 Pa. St. 78; *Keely v. Cassiday,* 93 id. 318.

The opinion of the court was delivered by

HORTON, C. J.: If the southwest quarter and the southeast quarter of section 33, township 5, range 18, were the only real estate mortgaged by John W. Lowe to the Equitable

Mortgage Company, we would promptly dispose of the case in favor of the mortgage company, upon the equitable doctrine announced in *Everston v. Central Bank*, 33 Kas. 352. But 800 acres of land in Phillips county were included in the mortgage recited in the petition. This mortgage, according to the petition, was executed on the 21st of January, 1889, and filed for record on the 6th of April, 1889. It was to secure $3,500, but the only money paid thereon was $934.13. It appears from the evidence that the mortgage company received the mortgage on the 11th day of April, 1889. This action was commenced on the 3d day of May, 1889. The petition alleges, and the evidence shows, that Lowe, the maker of the mortgage, had no title to the southeast quarter of section 33, township 5, range 18, but there are no allegations in the petition showing that he had no title to all the other land described in the mortgage. There are allegations in the petition that Charles H. Smith, Philip Yountz and the American Investment Company had mortgages at one time upon a part of the 800 acres of land other than the southwest quarter and the southeast quarter of section 33, but there are no allegations in the petition that these mortgage liens actually existed at the commencement of this action, or that they were of the full value of all the land, or that the other land not incumbered by mortgages was worthless as a security for the debt. For all that appears in the petition or evidence, the 480 acres of land alone, not embraced in the mortgages paid off, may have been sufficient to satisfy the $934.13, advanced upon the mortgage of John W. Lowe to pay off the four mortgages upon the southwest quarter and the southeast quarter of section 33. This, therefore, is somewhat like a case in which a mortgagee has a lien on two properties or funds and other mortgagees have junior liens on a part of the same properties or funds. In such cases, equity demands that the mortgagee who is secured by two proper-

1. Subrogation, when proper. ties or funds shall resort first to that property or fund which is not bound to the other mortgagees or creditors, in order that the others may receive the benefit

of their security so far as may be practicable. (Sheldon, Sub., § 63; *Ferry Co. v. Jersey Co.*, 1 Hopk. Ch. 460; *Everston v. Booth*, 19 Johns. Ch. 486; and *Hayes v. Ward*, 4 Johns. Ch. 123.)

It was in the power of the Equitable Mortgage Company, in this very action, to pursue and exhaust its remedy against the 480 acres of land included in the mortgage before being subrogated to the four mortgages paid off by it upon the southwest quarter and the southeast quarter of section 33, upon which the Kansas Trust and Banking Company and the Mortgage Trust Company of Pennsylvania also have mortgages. The right of subrogation or of equitable assignment is not founded upon contract, but upon the facts and circumstances of the particular case, and upon principles of natural justice. (*Everston v. Central Bank*, supra; *Crippen v. Chappel*, 35 Kas. 499; *Yaple v. Stephens*, 36 id. 680.) The Equitable Mortgage Company should have proceeded first against the 480 acres; and it is not equitable or just that it exhaust, in the first instance, the southwest quarter and the southeast quarter of section 33, so as to exclude the mortgagees or creditors having junior liens upon that property or fund only. The Equitable Mortgage Company showed in its petition that the defendant John W. Lowe had failed and neglected to pay the taxes for the year 1888 upon the lands embraced in his mortgage, and that the mortgage and debts secured thereby, on account of such default, were due and payable at the time this action was commenced. If, therefore, the mortgage company had proceeded against all of the land mortgaged, all of the mortgages could have been foreclosed and the liens of all the mortgagees adjusted according to equitable principles; but it is contrary to equity and natural justice, without a further showing, to permit the Equitable Mortgage Company to exhaust all of the property or fund upon which there are junior liens, when its mortgage embraces other property which may be sufficient to satisfy its debt.

Upon the trial, it was shown that Mrs. E. M. Lowe did

not sign the mortgage, and that the notarial certificate to the acknowledgment was a forgery, but this would not release John W. Lowe, or render the mortgage null and void as to him.    If John W. Lowe and the other parties having interests in the 480 acres of land referred to, who were parties in the courts below, but have not been made parties in this court, were properly in this court, we might perhaps reverse the case and send it back for a full foreclosure 2. Judgment— upon the whole 800 acres of land, and have the review—parties in supreme proceeds properly distributed; but we cannot court. render any judgment that will necessarily affect defendants who are not parties in this court by summons in error or otherwise. (*McPherson v. Storch*, 49 Kas. 313.)

Upon the petition, the other pleadings, and the evidence introduced upon the trial, the judgment of the district court must be affirmed.

ALLEN, J., concurring.

JOHNSTON, J., dissenting: The money advanced by the Equitable Mortgage Company upon the forged and fraudulent mortgage was loaned for the purpose of discharging a prior valid incumbrance, and had actually been so applied. When these facts had been established, they made a *prima facie* case entitling the Equitable company to be subrogated to the rights of the prior incumbrancer whose debt had been thus satisfied, there being no intervening rights or incumbrances. (*Everston v. Central Bank*, 33 Kas. 359; Sheldon, Sub., § 8; Harris, Sub., § 825.)    By advancing the money and paying the prior incumbrance, the plaintiff succeeded to the rights of the prior mortgagee, and this substitution in no manner disturbed or depreciated the liens of the subsequent mortgagees.    Their securities were just as good after the payment and substitution as they would have been had no payment been made by the Equitable Mortgage Company.    It is highly equitable that subrogation should be made, and it appears that it can be made without lessening the rights or doing any injustice to the defendants.    The only material

objection or defense against the subrogation of the plaintiff
is the claim that there are two funds to which plaintiff may
resort, on one of which the junior mortgagees have no lien,
and that, for their protection, the plaintiff should exhaust the
property covered by the fraudulent mortgage given to it
before resorting to the lien which it has succeeded to by pay-
ment.    This doctrine of two funds recognizes that the party
who has discharged a prior incumbrance is entitled to subro-
gation, and it only provides a rule for marshaling securities
and adjusting priorities in the interest of justice and equity.
The doctrine, however, is never applied so that it will work
injustice to a senior creditor.    He cannot be compelled to
resort to doubtful securities or to funds upon which he can
realize only by litigation.    "To confine the senior creditor to
one of two funds, it must be shown that it is sufficient to
satisfy his debt." (Harris, Sub., §§ 496, 497; Sheldon, Sub.,
§ 63.)    This fact must be shown by the defendant.    When the
plaintiff had proved the payment of the prior incumbrance
and its right to take the place of the prior incumbrancer, it
had established the right of subrogation, and it devolved
upon the defendants to show that the fund or property cov-
ered by the fraudulent mortgage was available and sufficient
without resorting to the other property.

From what appears in the record, the mortgage made by
Lowe to the plaintiff was false, fraudulent, and forged, and
some of the land which it purported to cover he did not own.
The loan was obtained upon a false and forged abstract of
title.    The mortgage was false and fraudulent, to which the
wife's signature had been forged.    The receipt of the register
of deeds, showing that the mortgage had been filed for record,
was also a forgery.    If there are any lands included in the
mortgage which were owned by Lowe, his wife has an inter-
est in them which is not conveyed by the mortgage.    The
loan having been obtained by the grossest fraud, on a false
and forged instrument, the plaintiff was at liberty to treat it
as being without force or effect, so far as the mortgagors were
concerned.    If Lowe has any interest in the mortgaged lands

4—53 KAS.

against which the plaintiff might enforce its claim, it is of the most dubious and doubtful character, and probably furnishes little if any security for the payment of the money innocently advanced and used in the discharge of a valid debt and incumbrance. If the judgment of the district court is sustained, the plaintiff is entirely cut off from any benefit of its substituted lien, although the interest of Lowe in the lands covered by the fraudulent mortgage may be wholly valueless. The authorities cited in the prevailing opinion do not go to the extent of defeating the senior mortgagee, but, recognizing his superior right, merely suspended the proceedings which he had instituted until the fund or mortgage which was not bound to the other creditors should be pursued and exhausted. The judgments entered in those cases decreed that, after exhausting the funds in which the others had no interest, and any debt or balance remained due to the plaintiff, the original suit should then proceed in the usual course to enforce the payment of such debt or balance, and the junior creditor could then take what remained. (*Ferry Co. v. Associates of Jersey Co.*, 1 Hopk. Ch. 460; *Hayes v. Ward*, 4 Johns. Ch. 123; *Everston v. Booth*, 19 Johns. Ch. 433.) This was certainly as far as the district court should have gone in this case, instead of cutting off the plaintiff from any rights under his substituted lien. I think the facts shown in the record entitle the plaintiff to subrogation, and that the judgment of the district court should be reversed.