ROBERT PATON *vs.* WILLIAM J. ROBINSON ET ALS.

Third Judicial District, Bridgeport, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A gift by joint will of "all goods, gear, debts, sums of money, furniture and other effects, and in general the whole personal property and goods in communion now belonging to us or wither of us at the death of the first deceaser, with the whole interest, profits, and produce of the premises and the writings, vouchers and securities thereof," is a bequest of personal property only, and does not pass any title to real estate.

The possession of one who recognizes or admits title in another, either by declaration or conduct, is not thereafter "adverse" to the latter, though it may have been hostile or antagonistic at first.

A deed by one ousted of possession (General Statutes, § 4042) is void only in so far as it is opposed to the principles of the common law against maintenance and is prohibited by the affirmative provisions of the statute. As against one holding the land by adverse possession and those in privity with him, such a deed is void; but as against the grantor and his heirs it may be valid by way of estoppel, after the grantee has sued for and recovered possession in the name of his grantor.

The ouster of a grantor which will render his deed void, must be of the same character as that which would be required to establish adverse possession; and therefore there can be no ouster if the possessor admits or acknowledges the title of another.

Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditors may hold or have against the principal debtor, and by use of which the party paying may thus be made whole.

The purchaser of an invalid but supposedly good title, who, as part consideration therefor, furnishes money to remove a mortgage upon the property, is entitled to be subrogated to the rights of the

mortgagee as against the true owners of the land who are bene-fited and protected by such payment.

The plaintiff purchased land of a widow, supposedly hers but which in fact belonged to her deceased husband's heirs at law, paying $600 to her and $400 to a bank for the discharge of a mortgage which it held on the property. Subsequently he discovered the inva-lidity of his title, bought in that of two of the three heirs at law, and being unable to buy out the third, requested and persuaded the defendant *R* to do so, after which the plaintiff recognized and treated *R* as the owner of an undivided one third of the property. *Held* that as against *R*, a bona fide purchaser without notice, the plaintiff could not claim a lien upon the property for the $600 paid to the widow, upon the theory that it had relieved the land which might otherwise have been burdened with the expense of her sup-port.

It is not indispensable to protection against such a claim, that the pur-chaser should have acquired a legal as distinguished from an equitable title or interest.

In the absence of a statute or positive rule of law, a lien on property can ordinarily be created only with the owner's consent, that is, by virtue of a contract express or implied made with him or with his duly authorized agent.

In order that exceptions to the finding may be presented properly on appeal (Practice Book, p. 268, § 9), it should appear from the record that a motion to correct was made below and that the ex-ceptions are distinctly and specifically assigned as grounds of error.

Argued November 11th, 1908—decided January 22d, 1909.

ACTION to quiet and settle the title to real estate, brought to and tried by the Superior Court in New Haven County, *Robinson, J.;* facts found and judgment rendered partly in favor of each party, from which the plaintiff appealed. *No error.*

*Henry G. Newton* and *Harrison Hewitt,* for the appellant (plaintiff).

*William B. Stoddard,* for the appellees (defendants).

RORABACK, J. It appears from the finding that in 1886 one James Stevenson died, testate, owning certain real estate, leaving a widow, Martha Stevenson, and three heirs

at law, Mary Gorham, Hugh Caldwell, and Thomas Baird. Mrs. Stevenson supposed the land to be hers, and on or about September 29th, 1890, gave the plaintiff a warranty deed of the land and received from him the sum of $600 in money, and the plaintiff also furnished the sum of $400, which was paid to the Connecticut Savings Bank in full payment of the balance that was due upon a mortgage, which the Savings Bank then released. The plaintiff took possession of this land under said warranty deed, and claimed title to the same until about 1896. During that year one Samuel Robinson, late of New Haven and now deceased, applied to the plaintiff to purchase the land. They had negotiations about it and this resulted in a title search. It was then discovered that the plaintiff had no valid title to the land. The plaintiff thereupon attempted to purchase the title of the heirs, and did contract with and purchase the title of two of the heirs, namely, Hugh Caldwell and Thomas Baird. They conveyed to him their interest in such land by a deed which has since been lost and cannot be found. The plaintiff was unable to purchase the title vested in Mary Gorham, and the plaintiff and Robinson then entered into an agreement that Robinson should purchase Mary Gorham's title, and, when Robinson had obtained his title from Mary Gorham, he, the plaintiff, would complete the sale of the other two thirds to Robinson. In pursuance of this agreement Robinson purchased from Mary Gorham her interest in the property, paid her therefor, and obtained a deed of the same dated May 25th, 1897. After that time and up to the time of his death Robinson claimed a one-third interest in the land, and did so with the knowledge and acquiescence of the plaintiff. The plaintiff recognized Robinson's right and interest in the land from and after May, 1897, and paid him one third of the annual rent collected on this property, and treated Robinson as an owner with him so long as Robinson lived. Each paid taxes thereon according to their respectives shares as listed,

namely, Robinson one third and the plaintiff two thirds. This continued up to the death of Robinson. It did not appear in evidence that the plaintiff and Robinson, or either of them, after Robinson received his deed from Mrs. Gorham, ever resumed negotiations looking to a sale by the plaintiff to Robinson, of the plaintiff's two-thirds interest. Since the death of Robinson his estate has paid taxes upon one third of said premises. Up to the time that Mrs. Stevenson deeded this land to the plaintiff, in 1890, she had the exclusive possession of it from the death of her husband in 1886, and treated it as her own. Up to the time Robinson obtained his deed from Mary Gorham, in 1897, the plaintiff had the sole, actual possession of this land, and recognized no claim, interest or right of any one else in or to it, except as hereinbefore stated.

The plaintiff contended that his grantor, Martha Stevenson, obtained title to the real estate under the will of her husband, James Stevenson. This document, which was introduced in evidence and made part of the record, was executed jointly by James Stevenson and his wife, Martha, purported to be a mutual will, and described the property to be affected thereby as follows: "All and sundry goods, gear, debts, sums of money, furniture and other effects and in general the whole personal property and goods in communion now belonging to us or wither of us at the time of the death of the first deceaser with the whole interest, profits, and produce of the premises and the writings, vouchers and securities thereof." This was a bequest of personal property only, and did not pass to Mrs. Stevenson any title to the real estate now in controversy.

The plaintiff claims that the possession of Martha Stevenson, his grantor, from 1887, joined with his possession from 1890, established his title by adverse possession. To this claim there are decisive objections. It appears that Mrs. Stevenson occupied the land from 1886 to 1890, when she sold it to the plaintiff. In 1897 the plaintiff discovered

that he had no valid title and attempted to purchase the Gorham interest, but failed in his effort. Under an arrangement with Robinson this one-third interest was at that time purchased by him. Since that time the Robinson interest has been fully recognized and admitted by the plaintiff in dividing the rent. The possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other. 1 Greenl. on Ev. (14th Ed.) § 109; *Smith* v. *Martin,* 17 Conn. 399, 401; *Deming* v. *Carrington,* 12 id. 1, 5; *Rogers* v. *Moore,* 10 id. 13. Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it. *Lewis* v. *New York & H. R. Co.,* 162 N. Y. 202, 220, 56 N. E. 540. After the purchase of the Gorham interest by Robinson there was nothing in the conduct of the plaintiff showing a repudiation of this right. Upon the other hand, as stated, there was an unmistakable recognition and admission that the Robinsons were the owners of this one-third interest, and the plaintiff's occupation must be presumed to have been subservient to their rights. It clearly appears that the adverse occupation of the plaintiff, when united with that of Mrs. Stevenson, is at least four years short of the time required by statutory regulation to acquire title by adverse possession.

The plaintiff claims that Mary Gorham was so ousted of the possession of said land, at the time of the execution and delivery of the deed made by her to Samuel Robinson, that said deed was utterly void.

General Statutes, § 4042, provides that "all conveyances and leases, for any term, of any building, land, or tenement, of which the grantor or lessor is ousted by the entry and possession of another, unless made to the person in actual possession, shall be void." This statute is only in affirmance of the common law, which disabled a grantor ousted from

transferring his title to another, on the ground that such alienation tended to increase maintenance and litigation, and afforded means to powerful men to purchase rights of action and oppress others. Such deeds, therefore, are only so far void as they are opposed to the principles of the common law and prohibited by the affirmative provisions of the statutes. *Goodman* v. *Newell,* 13 Conn. 75, 78. Assuming it to be true that there was adverse occupation in the plaintiff at the time Mrs. Gorham deeded her interest to Robinson, and that no title was transferred as against the party then in possession, under the circumstances disclosed it cannot affect the result. A deed of lands adversely possessed is void only as to the person in possession and those claiming in privity with him; as to the grantor and his heirs it is good, by way of estoppel, and the grantee may sue for and recover possession in the name of the grantor, and then protect himself in his title under such deed. *Livingston* v. *Proseus,* 2 Hill (N. Y.) 526; *Williams* v. *Jackson,* 5 Johns. Rep. (N. Y.) 489; *Brinley* v. *Whiting,* 5 Pick. (Mass.) 348. Mrs. Gorham and all parties interested are made parties to this action, and "the court may determine the ultimate rights of the parties on each side, as between themselves, and grant to the defendant any affirmative relief to which he may be entitled." Practice Book (1908), p. 257, § 195. Ouster which will make a grantor's deed void is the same as that which, if continued for fifteen years, would make a perfect title by adverse user in the occupant. *Merwin* v. *Morris,* 71 Conn. 555, 574, 42 Atl. 855. The actions of the plaintiff at and before the execution and delivery of the deed to Robinson were a plain admission and acknowledgment of Mrs. Gorham's title, and his possession did not constitute an ouster, but should be regarded as in submission to that title.

In the judgment rendered by the Superior Court it is found that the plaintiff is the owner in fee simple of an undivided two-thirds part of said premises subject to said

mortgage, and that the remaining undivided one-third part of said land at the time of his death was owned in fee simple by said Samuel Robinson, deceased, subject to the mortgage of $400. The ground on which the court below proceeded was that the plaintiff was subrogated to the rights of the Connecticut Savings Bank to the extent of $400. Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditors may hold as against the principal debtor and by use of which the party paying may thus be made whole. Bisp. on Eq. (7th Ed.) § 335. In the present case the plaintiff furnished the $400 to Mrs. Stevenson with which to pay the balance of the mortgage to the Connecticut Savings Bank, that she might give him a clear and unencumbered title. The plaintiff obtained no valid title under the deed given him, and was compelled to purchase the two-thirds interest, which he now owns, from the heirs of James Stevenson. This money was paid for the protection and benefit of those owning this land, and the plaintiff is entitled to be subrogated to the rights and securities of the bank. *Regan* v. *New York & N. E. R. Co.*, 60 Conn. 124, 142, 22 Atl. 503; *Dutcher* v. *Hobby*, 86 Ga. 198, 12 S. E. 356; *Everston* v. *Central Bank*, 33 Kan. 352, 6 Pac. 605.

It is also urged that the plaintiff has a lien not only for the $400 which was paid to satisfy the mortgage, but for the additional sum of $600 which was paid to Mrs. Stevenson and used in paying her personal expenses. Upon this subject the court has found that on March 2d, 1885, there was paid to the Connecticut Savings Bank upon said mortgage the sum of $600, $300 in cash, and $300 that was drawn from a deposit-book in said bank which stood in the joint names of the said James and Martha Stevenson. It did not appear in evidence who deposited the money in the bank that stood in the names of Mr. and Mrs. Stevenson.

A lien may be created when a party in making expenditures upon real estate has acted in good faith with an honest but mistaken assumption that he was the owner. In such cases the lienor's rights must necessarily be limited to such disbursements as were beneficial to the property. This implies that the debt is due from the person as against whom the pledge is claimed, unless the owner, by some express act or implication, pledged or authorized another to pledge his property for the debt of another. In 1890, when Mrs. Stevenson gave the warranty deed to the plaintiff, the owners of the property which she attempted to convey were the heirs of James Stevenson. There was no debt due from them, neither did Mrs. Stevenson have any authority, express or implied, to make a contract or create a right for the lien upon the realty which they owned. "Generally a lien can only be created with the owner's consent; that is, by a contract express or implied with the owner of the property or with some one by him duly authorized, or without his consent by the operation of some positive rule of law, as by statute." 25 Cyc. p. 663.

The fact that the equity in this real estate might have been used for the necessary support of Mrs. Stevenson during her lifetime, in no way strengthens the plaintiff's claim for a lien for the money paid by him in excess of the mortgage. There are no facts alleged or found which will permit a favorable consideration of this proposition.

Upon general principles the defendant would have the right to defend against this claim of a prior encumbrance, upon the ground that he is a bona fide purchaser of the property for a valuable consideration without any notice of the existence of such a claim. The plaintiff replies, in substance, to this proposition, that to entitle himself to this legal protection it should appear that the defendant obtained a legal title, and not a mere semblance of title from one who was ousted of possession. It is not indispensable to protect himself that the defendant should be the

purchaser of the legal title. "The rule in equity is, that, if a defendant has in conscience a right, equal to that claimed by the person filing a bill against him, although he is not clothed with a perfect legal title, this circumstance, in his situation as defendant, renders it improper for a court of equity to compel him to make any discovery which may hazard his title. . . . In short, courts of equity will not take the least step against an innocent purchaser in such a predicament; and will, on the other hand, allow him to take every advantage which the law gives him; for there is nothing which can attach itself upon his conscience, in such a case, in favor of an adverse claim." 2 Story on Eq. Jurisp. (12th Ed.) §§ 1502, 1503. It appears that Robinson made this purchase, paid his money, and obtained this deed, at the instance and request of the plaintiff. There is no suggestion that Robinson, when he obtained his deed, had any knowledge of the existence of a claim for money paid upon this mortgage, or of an encumbrance which had been fully discharged of record seven years before he was induced by the plaintiff to part with his money in obtaining his title. "If a plaintiff comes into equity, seeking relief upon a legal title, against a bona fide purchaser of an equitable title, if he is entitled to relief in such a case (which is perhaps doubtful), still, he must obtain it upon the strength of his own case, and his own evidence; and he is not entitled to extract from the conscience of the innocent defendant any proofs to support it." 2 Story on Eq. Jurisp. (12th Ed.) § 1503.

The plaintiff's exception to the finding of facts cannot be considered by this court. It does not appear that there was any motion to correct, or any assignment in the reasons of appeal upon this ground. Practice Book (1908), p. 268, § 9.

There is no error.

In this opinion the other judges concurred.