Paul Alan TEDESCHI, individually and on behalf of all other persons who are similarly situated, Plaintiff,

v.

Raymond P. BLACKWOOD et al., Defendants.

Civ. No. H–75–140.

United States District Court, D. Connecticut.

March 22, 1976.

Chester W. Fairlie, Legacy, Inc., New London, Conn., for plaintiff.

Robert C. Leuba, Conway, Londregan, Leuba & McNamara, New London, Conn., for defendants Blackwood.

Cornelius F. Tuohy, Asst. Atty. Gen., Carl R. Ajello, Atty. Gen., State of Conn., Hartford, Conn., for defendant Pac.

James F. Brennan, Jr., Suisman, Shapiro, Wool & Brennan, Groton, Conn., for defendant Giesing.

Before SMITH, Circuit Judge, CLARIE and BLUMENFELD, District Judges.

## MEMORANDUM OF DECISION

### J. JOSEPH SMITH, Circuit Judge:

This case involves a challenge under the due process clause of the fourteenth amendment to provisions of Conn.Gen. Stat.Ann. § 14–150(b) and (c). The statute empowers a police officer or motor vehicle inspector, who has determined that a motor vehicle is either abandoned, unregistered or dangerously parked, to have the vehicle towed to a garage for storage. The statute further provides that all towing and storage charges which are accordingly incurred shall become a lien on the vehicle and that the lien may in time be foreclosed by the garage through its sale of the vehicle. The statute, however, does not afford a right to a hearing to a person wishing to contest the application of either its towing or its lien provisions to his vehicle.[1]

1. Subsections (b) and (c) of § 14–150:

(b) Any inspector of the motor vehicle department, any officer attached to an organized police department or any state police officer, upon discovery of any motor vehicle apparently abandoned, whether situated within or without any highway of this state, or of any motor vehicle without proper registration or of any motor vehicle that is a menace to traffic, shall take such motor vehicle into his custody and may cause the same to be taken to and stored in a suitable place. There shall be no liability attached to such officer for any damages to such motor vehicle while in his custody. All charges necessarily incurred by such officer in the performance of such duty shall be a lien upon such motor vehicle. The owner or keeper of any garage or other place where such motor vehicle is stored shall have a lien upon the same for his storage charges, and if the current market value of such motor vehicle does not exceed one hundred dollars and such motor vehicle has been stored for a period of not less than thirty days, such owner or keep-

er may sell the same for storage and towing charges owed thereon, provided a notice of intent to sell shall be sent to the commissioner and the owner of such motor vehicle, if known, as provided in subsection (c) of this section, five days before the sale of such vehicle. If the current market value of such motor [vehicle] exceeds one hundred dollars and if such motor vehicle has been so stored for a period of ninety days, such owner or keeper may sell the same at public auction for cash, at his place of business, and apply the avails of such sale toward the payment of his charges and the payment of any debt or obligation incurred by the officer who placed the same in storage, provided such sale shall be advertised in a newspaper published or having a circulation in the town where such garage or other place is located three times, commencing at least five days before such sale; and, if the last place of abode of the owner of such motor vehicle is known to or may be ascertained by such garage owner or keeper by the exercise of reasonable diligence, notice of the time and place of sale shall be given him by mailing

## I. THE BACKGROUND OF THE CASE

Sometime prior to the morning of February 8, 1975, the plaintiff Paul Tedeschi parked his car on a street in Groton, Connecticut. On the morning of February 8, the Groton police concluded that the car had been abandoned and accordingly, pursuant to Conn.Gen.Stat.Ann. § 14–150(b), had it towed by Connecticut Road Aid, a local garage owned by defendants Raymond and Josephine Blackwood. (The Blackwoods and their garage are hereinafter referred to as "Road Aid.") Later that morning, upon discovering that his car was missing, Tedeschi telephoned the Groton police who informed him that it had been towed and that it was being stored at Road Aid. Tedeschi's attempts to obtain an opportunity to contest the legality of the seizure of his car were futile, although the shift sergeant at the Groton police station did listen to his complaints before issuing him a summons for having abandoned a motor vehicle in violation of Conn.Gen.Stat.Ann. § 14–150(a).[2] Tedeschi later attempted to regain possession of his car from Road Aid, but as authorized by § 14–150(b), the garage conditioned its return of the car upon his payment of towing and storage charges. Tedeschi was unable to pay these charges.

On April 30, 1975, Tedeschi brought an action for damages and declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 against Road Aid, the Groton police chief, and the commissioner of Connecticut's Department of Motor Vehicles ("the Commissioner"). The United States District Court for the District of Connecticut, T. Emmet Clarie, *Chief Judge,* granted Tedeschi's motion for a temporary restraining order enjoining the sale of his car by Road Aid. On May 26, 1975, Tedeschi made a motion for class certification which, as amended on September 29, 1975, requested that he be allowed to proceed on behalf of himself and all other automobile owners in Connecticut directly affected by § 14–150(b) and (c). Since Tedeschi was seeking to enjoin the State's enforcement of the statute on constitutional grounds, this three-judge court was designated on August 7, 1975, pursuant to 28 U.S.C. §§ 2281 and 2284.

Two working days before the date scheduled for the hearing of this case, Road Aid offered to return Tedeschi's car in exchange for his promise to relinquish all his claims for damages, and Tedeschi accepted. The City of Groton paid $100 to Road Aid as partial compensation for any loss incurred by the garage as a result of this agreement, and in return Road Aid abandoned its counterclaim for damages against the city's police chief.

Specifically, Tedeschi now requests: (1) that he be allowed to proceed on behalf of himself and all other automobile owners in Connecticut directly affected

such notice to him in a registered or certified letter, postage paid, at such last usual place of abode, at least five days before the time of sale. The proceeds of such sale, after deducting the amount due such garage owner or keeper and all expenses connected with such sale, including the expenses of the officer who placed such motor vehicle in storage, shall be paid to the owner of such motor vehicle or his legal representatives, if claimed by him or them at any time within one year from the date of such sale. If such balance is not claimed within said period, it shall escheat to the state.

(c) If the owner of such motor vehicle placed in storage in accordance with the provisions of this section does not claim such motor vehicle within thirty days, the owner of such garage or other place of storage shall, within forty days of the date such motor vehicle was placed in storage with him, send a written notice to the commissioner, stating the make, engine number and chassis number of such motor vehicle, the date such motor vehicle was left with him for storage and by whom and the registration number thereof if any number plates are on such motor vehicle, which notice shall be placed on file by the commissioner and shall be subject to public inspection. Any sale under the provisions of this section shall be void, unless the notice required by this section has been given to the commissioner.

2. No hearing followed the issuance of the summons since the charge which had prompted it was dropped.

by Conn.Gen.Stat.Ann. § 14–150(b) and (c); (2) that the towing and lien provisions of § 14–150 be declared unconstitutional; (3) that Road Aid, the Groton Chief of Police, and their successors, employees, or agents be enjoined from depriving the plaintiff or any member of the proposed class of the possession of his automobile pursuant to the towing or lien provisions of § 14–150; and (4) that the Commissioner of the Department of Motor Vehicles and his successors, employees, or agents be enjoined from recognizing the validity of automobile sales effected pursuant to the lien provisions of § 14–150.

## II. CLASS CERTIFICATION

■ The plaintiff's motion for class certification is granted. We conclude that the requirements of Rule 23(a) and (b)(2), Fed.R.Civ.P., are satisfied by the proposed class—all automobile owners in Connecticut directly affected by Conn. Gen.Stat.Ann. § 14–150(b) and (c). The size of the proposed class makes joinder of all its members impracticable, there are questions of law common to all the members, and the claims of the plaintiff are typical of those of the unnamed members. Moreover, since Tedeschi has withdrawn his damage claims, the proposed class qualifies under Rule 23(b)(2), for the defendants have

acted . . . on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Whether Tedeschi would "fairly and adequately protect the interest of the class," as required by Rule 23(a)(4), at first appears problematic since he at least arguably no longer alleges a cognizable personal claim against the defendants. On this issue, however, the present case is similar to the situation presented in Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), where the Supreme Court determined the same issue saying:

In the present suit, where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met.

419 U.S. at 403, 95 S.Ct. at 559, 42 L.Ed.2d at 543 (footnote omitted). See also Frost v. Weinberger, 515 F.2d 57, 64–65 (2d Cir. 1975). Furthermore, Tedeschi is represented by a federally funded legal services office which has a clientele with a continuing interest in the subject matter of this action. See Gerstein v. Pugh, 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 861, 43 L.Ed.2d 54, 63 (1975).

■ Finally, since this is a 23(b)(2) class action, unnamed class members need not be given notice of its pendency. Sosna v. Iowa, 419 U.S. at 397 n. 4, 95 S.Ct. at 556, 42 L.Ed.2d at 539; Frost v. Weinberger, 515 F.2d at 65.

## III. THE MOOTNESS ISSUE

■ The defendants contend that this case is moot because Tedeschi has both regained possession of his car and relinquished all claims for damages. We disagree. Since we have certified this case as a class action on behalf of all automobile owners in Connecticut directly affected by the provisions of § 14–150(b) and (c), we need not decide whether it would be moot if the plaintiff had proceeded solely on his own behalf, for in light of Sosna v. Iowa, 419 U.S. 393, 401, 95 S.Ct. 553, 558, 42 L.Ed.2d 532, 541 (1975), the instant case's status as a class action forecloses any issue of mootness that might have otherwise arisen.

The pertinent issue addressed by the Court in Sosna was under what circumstances the mooting of the named plaintiff's personal claims in a class action does or does not moot the entire action. The named plaintiff there brought a class action to challenge the constitutionality of an Iowa statute's one-year residence requirement for petitioners in marriage dissolution proceedings. Al-

though by the time the case reached the Supreme Court, the named plaintiff had obtained a divorce in another state, the Court, nevertheless, ruled that the case was not moot. The Court's conclusion was predicated on its determination that four essential requirements had been met. We find that each of the requirements is also met in the instant case.

The first of these requirements was that the named plaintiff personally have had standing to sue at the time of the filing of his complaint. 419 U.S. at 402, 95 S.Ct. at 559, 42 L.Ed.2d at 542. In the instant case, Tedeschi clearly had standing when he initiated his action, for at that point Road Aid was denying him the possession of his car under the authority of the statute he sought to challenge.

The second requirement articulated in *Sosna* was that the case present an article III controversy at the time of its decision. 419 U.S. at 402, 95 S.Ct. at 559, 42 L.Ed.2d at 542. There, the Court found that this requirement was satisfied because

> [a]lthough the controversy [was] no longer live as to [the] appellant Sosna, it [remained] very much alive for the class of persons she [had] been certified to represent.

419 U.S. at 401, 95 S.Ct. at 558, 42 L.Ed.2d at 541. Here, the situation is similar. While Tedeschi may not be presently aggrieved by the implementation of the contested provisions of the Connecticut statute, the same cannot be said of the class of persons he has been certified to represent. Although unable to provide this court with the total number of motor vehicles subjected to the towing and lien provisions of § 14–150 over any period of time, defendant Commissioner conceded that from January 1, 1974, through February 28, 1975, Connecticut's Department of Motor Vehicles had been notified pursuant to § 14–150(c) of more than 1,730 vehicles that

garages had held for at least thirty days under the authority of § 14–150(b). Moreover, the Groton police chief admitted that during 1974 his department had ordered forty "abandoned" cars towed pursuant to this subsection.

The third requirement for justiciability articulated in *Sosna* was that the controversy presented be "capable of repetition, yet evading review." 419 U.S. at 400–02, 95 S.Ct. at, 558, 42 L.Ed.2d at 541.[3] This requirement is met in the instant case, for, if this case could be mooted by the strategy employed here by the defendants, there would be nothing to prevent successful emulation of this strategy by defendants in subsequent cases. Indeed, resort to such strategy by future defendants could be reliably predicted. The preservation of the lien provisions of Conn.Gen.Stat.Ann. § 14–150 would preclude the need for the State or its municipalities to devise a new and perhaps more expensive means of ensuring the participation of private garages in the enforcement of § 14–150. From the perspective of the garages, preservation of the statute's lien provisions would forestall the adoption of a less profitable or more cumbersome statutory scheme. Plaintiffs would soon learn the futility of challenging the provisions since defendants could force them through the costs of preparing for litigation and then moot the case on the eve of trial. The fact that the instant defendants did not offer to return the plaintiff's car until two working days before the final hearing and almost five months after he filed his complaint is not without significance. Nor is the fact that the City of Groton offered to defray $100 of the possible revenue foregone by Road Aid as a result of its settlement with the plaintiff. See *Workman v. Mitchell*, 502 F.2d 1201, 1208 (9th Cir. 1974).

The fourth and final requirement of *Sosna* is that the class representative

---

3. The expression "capable of repetition, yet evading review" apparently was first used with respect to the issue of mootness in *South-* *ern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911).

must personally have had standing to sue at the time the class was certified. In the instant case, however, although Tedeschi filed his motion for class certification on May 26, 1975, four months before he entered into the agreement which the defendants assert mooted his case, he did accept their offer before the motion was granted. Hence, at first blush the fourth requirement appears to be unfulfilled; essentially, however, it has been fulfilled.

The Court in *Sosna* qualified its statement of this fourth requirement in the following footnote.

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the District Court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

419 U.S. at 402 n. 11, 95 S.Ct. at 559, 42 L.Ed.2d at 542. The type of exceptional situation envisioned in this footnote materialized in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), which involved an appeal of a district court decision, in a class action, holding that persons arrested and detained on the basis of an information have a constitutional right to a judicial hearing on the question of probable cause. By the time the case reached the Supreme Court, however, the named plaintiffs-respondents had been convicted, and their personal claims had consequently been mooted; but, citing *Sosna* the Court ruled that

> [t]his case [belonged] . . . to that narrow class of cases in which the termination of a class representative's

claim does not moot the claims of the unnamed members of the class.

420 U.S. at 110–11 n. 11, 95 S.Ct. at 861, 43 L.Ed.2d at 63.

The Court then acknowledged that the record did not reveal whether the personal claims of the named plaintiffs had been alive when the district court certified the class. On the basis of the *Sosna* footnote quoted above, the Court nevertheless concluded that, even if the personal claims of the representatives of the class had been mooted prior to certification, the entire action remained justiciable. The Court reasoned:

> The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.

420 U.S. at 110–11 n. 11, 95 S.Ct. at 861, 43 L.Ed.2d at 63. This reasoning applies equally here. If the instant case were moot, it is "by no means certain," indeed here it is unlikely, that future plaintiffs, situated as was Tedeschi at the commencement of his action, would have standing long enough for a judge to grant a certification motion, for future defendants could well be expected to return plaintiffs' vehicles prior to the date set for the hearing of such a motion.

Moreover, here, as in *Gerstein,* "the constant existence of a class of persons suffering the deprivation is certain." Thus, as was foreseen in *Sosna* and as was in effect the case in *Gerstein,* the certification of the class in this case is deemed to "relate back" at least to May 26, 1975, the date the motion was filed.[4]

---

4. The Court in *Gerstein* did not actually speak of the certification of the plaintiffs-respondents' class "relating back." It, however, accomplished the same result by dealing with the case before it as qualifying under the exception recognized by *Sosna* in the footnote quoted from *Sosna* above. *Gerstein v. Pugh,* 420 U.S. at 110–11 n. 11, 95 S.Ct. at 861, 43 L.Ed.2d at 63.

See also *Frost v. Weinberger,* 515 F.2d 57, 63–64 (2d Cir. 1975). Consequently, this case satisfies the fourth requirement of *Sosna,* namely that the named plaintiff personally have had standing at the time of the class certification.

In light of the preceding discussion, we reject the defendants' contention that the instant case has been rendered moot by the return of plaintiff Tedeschi's car and his concomitant retraction of his damage claims prior to the case's final hearing. See also, *e. g., Dunn v. Blumstein,* 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998, 31 L.Ed.2d 274, 279 (1972); *Frost v. Weinberger,* 515 F.2d 57, 62–64. *Cf. Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1, 4 (1969); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911).[5]

## IV. THE STATE ACTION ISSUE

Tedeschi brings this civil rights action pursuant to 28 U.S.C. § 1343(3)[6] and 42 U.S.C. § 1983.[7] He asserts that the effectuation of the towing and lien provisions of Conn.Gen.Stat.Ann. § 14–150 un-constitutionally deprives affected automobile owners of their property, to wit, their automobiles, "under color of state law." That 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 were "intended to provide a federal judicial forum for the redress of wrongful deprivations of property by persons acting under color of state law" was settled by the Supreme Court in *Lynch v. Household Finance Corp.,* 405 U.S. 538, 543, 92 S.Ct. 1113, 1117, 31 L.Ed.2d 424, 429 (1972). See also, *e. g., Tucker v. Maher,* 405 U.S. 1052, 92 S.Ct. 1489, 31 L.Ed.2d 787 (1972). Application of these two statutory provisions to the case at hand, however, requires a determination that, in implementing the provisions of § 14–150, the defendants (including Road Aid, of course) act "under color of state law." We conclude that such a determination is inescapable.

The towing of an abandoned, unregistered, or dangerously parked motor vehicle under the authority of § 14–150 by either the police or a private garage constitutes "state action," for a vehicle can be towed pursuant to this section only at the request of a state agent.

---

**5.** Neither *Moore* nor *Southern Pacific Terminal Co.* was a class action; yet, the Court ruled that each of them was justiciable on the basis of (1) the "capable of repetition, yet evading review" rationale and presumably (2) its finding that the possibility of the repetition of the injury in question pertained to the plaintiff himself, not merely to others who subsequently would be in a situation similar to his at the commencement of his action. Both *Moore* and *Southern Pacific Terminal Co.* are cited in *Sosna v. Iowa,* 419 U.S. 393 at 399–400, 95 S.Ct. 553, at 557, 42 L.Ed.2d 532, at 540, where the Court clearly indicates its approval of their application of the "capable of repetition, yet evading review" rationale to non-class actions of their sort. The question accordingly arises whether Tedeschi's action would now be moot, if he had proceeded solely on his own behalf and not as a representative of a class. As we noted above, this question need not be addressed; however, its solution would depend on the assessment of the likelihood of a motor vehicle owned by Tedeschi being subjected to the towing and lien provisions of Conn.Gen. Stat.Ann. § 14–150 in the future. *Compare, e. g., Moore v. Ogilvie,* 394 U.S. at 816, 89 S.Ct. at 1494, 23 L.Ed.2d at 4 *and Southern Pacific Terminal Co. v. ICC,* 219 U.S. at 514–17, 31

S.Ct. at 284, 55 L.Ed. at 317 *with Sosna v. Iowa,* 419 U.S. at 400, 95 S.Ct. at 557, 42 L.Ed.2d at 540.

**6.** 28 U.S.C. § 1343(3):

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

**7.** 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42

Meaningful participation by a state agent, pursuant to a state statute, in the deprivation of a person's property by another private person unquestionably brings the entire transaction "under color of state law."[8] The sole objective of § 14–150 is the removal of abandoned, unregistered, and dangerously parked vehicles, and the sole justification of the section's lien provisions is the effectuation of this state objective. Consequently, with respect to the issue of whether the implementation of the lien provisions constitutes "state action," these provisions and that authorizing towing must be dealt with as an entity.

■■ Furthermore, we conclude that even taken by itself § 14–150's creation of a garagekeeper's lien on a vehicle to the extent of towing and storage charges constitutes "state action." While Connecticut common law may recognize the legality of a garage lien for services on a vehicle voluntarily surrendered for the performance of these services, it does not recognize such a lien where the garage has gained possession of the vehicle without the owner's consent. See Paton v. Robinson, 81 Conn. 547, 554, 71 A. 730 (1909). Thus, while the mere existence of a statute acknowledging the legality of private conduct is not sufficient to bring the conduct "under the color of state law,"[9] here § 14–150 authorizes conduct which would otherwise be impermissible and, therefore, we conclude, provides for "state action."[10]

Finally, taken by itself, the foreclosure of a garagekeeper's lien pursuant to § 14–150 to cover towing and storage charges also constitutes "state action." Section 14–150 not only authorizes the creation of a lien on a vehicle towed under its authority, it also authorizes such a lien's foreclosure. In Hernandez v. European Auto Collision, 487 F.2d 378 (2d Cir. 1973), the Second Circuit has given a strong indication that it would find § 14–150's sale, i. e., foreclosure, provisions unconstitutional. Hernandez involved, inter alia, an attack upon similar provisions of a New York statute, which, however, pertained solely to motor vehicles which came into the possession of garages with the consent of the vehicles' owners. Thus, if anything, the sale provisions of the New York statute were less vulnerable than those contested here. The constitutionality of the

---

**8.** E. g., Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (court clerk's ex parte issuance of a summons, pursuant to Wisconsin statute authorizing prejudgment garnishment of wages, provided a sufficient intrusion on the part of State to constitute "state action"); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (clerk's ex parte issuance of writ of replevin and its prejudgment execution by state official pursuant to state law constituted "state action"); North Georgia Finishing, Inc. v. Di-Chem, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (similar to Sniadach except that prejudgment garnishment statute did not apply to wages); Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974) (in upholding prejudgment assignment statute on finding of no "state action," court emphasized the absence of state participation).

**9.** E. g., Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974); Male v. Crossroads Associates, 469 F.2d 616, 621 (2d Cir. 1972).

**10.** For the significance of the distinction between a statute which authorizes otherwise impermissible conduct and one which, in regulating previously lawful conduct, acknowledges its lawfulness see Shirley v. State National Bank, 493 F.2d 739 (2d Cir. 1974) and Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974). In Shirley the court found no "state action" where, upon the default of the buyer, a car was repossessed through self-help in accordance with the terms of the contract of sale. The court reasoned that, although the repossession was effected pursuant to the terms of a New York statute, the statute was merely regulatory, since the right to repossess property without a hearing in this type of situation had been recognized prior to the enactment of the statute, and that, therefore, the repossession was not effected "under the color of state law." The court's reasoning in Bond was similar. There, it found that a lender's filing of an assignment with a borrower's employer without a hearing but in accordance with a state statute did not constitute "state action" since the filing procedure was accomplished without the participation of a state agent and since the procedure had been lawful prior to the enactment of the statute, which the court accordingly found was merely regulatory.

New York provisions was not definitively determined since the court remanded the case for further factual findings. Nevertheless, while emphasizing that a firm ruling would be premature, the court indicated strong doubts as to the constitutionality of the sale provisions, and Judge Timbers, in a concurring opinion in which Judge Lumbard joined, expressly stated that he "would direct the district court to declare the sale provisions unconstitutional," provided the plaintiff-appellant could prove his allegations. 487 F.2d at 383.

To summarize, each of the three activities authorized by § 14–150, namely the towing, detention, and sale of affected vehicles, individually involves "state action." The sole justification of the detention and sale provisions is their facilitation of the removal of abandoned, unregistered, and dangerously parked vehicles. Thus, even if, when considered by itself, the implementation of the lien provisions did not result in "state action," it would still be infected by the "state action" resulting from the implementation of § 14–150's towing provision.[11]

## V. THE ISSUE OF THE CONSTITUTIONALITY OF § 14–150'S TOWING AND LIEN PROVISIONS

■ Authorization of a towing without prior hearing of an apparently abandoned, unregistered or dangerously parked vehicle might be justified as a deprivation of minimal duration which is necessary to the State's control and regulation of motor vehicles within its borders. Certainly, immediate removal of a vehicle left unattended in a busy intersection or other obstruction to traffic may be authorized. Seizure and towing, however, unquestionably involve an important deprivation of property and can be justified without prior hearing only if the circumstances permitting such action are narrowly defined and an adequate opportunity for a hearing [12] is accorded promptly after the seizure. The statute under attack utterly fails to meet these requirements. It fails to distinguish among the three classifications of automobiles it purports to include: abandoned, unregistered and those which are a menace to traffic. For each classification the analysis in terms of the State's interest in removing the automobile from the street is different and this is turn affects the timing and extent of the hearing required by the fourteenth amendment.

In *Frost v. Weinberger*, 515 F.2d 57, 66 (2d Cir. 1975), Judge Friendly, after discussing some of the earlier Supreme Court cases on this issue,[13] stated:

> The Court's decisions can be fairly summarized as holding that the required degree of procedural safeguards varies directly with the importance of the private interest affected and the need for and usefulness of the particular safeguard in the given circumstances and inversely with the burden and any other adverse consequences of affording it.

The importance of the private interest in owning and operating an automobile has previously been recognized in this context. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Hernandez v. European Auto Collision, Inc.,* 487 F.2d 378, 385 (1973) (concurring opinion of Timbers and Lumbard, *JJ.*); *Al-*

---

11. In *Stypmann v. Nelder,* Civil No. 70–2315 (N.D.Cal., Apr. 16, 1974), *appeal docketed,* No. 74–1844, 9th Cir., May 9, 1974, lien provisions similar to those in Conn.Gen.Stat.Ann. § 14–150 were declared to be violative of the fourteenth amendment's due process clause. In its order granting the plaintiffs' motion for summary judgment, the district court noted its previous ruling that the defendants, one of whom was a garage and tow operator, had acted "under color of state law."

12. *See generally* Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267 (1975).

13. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Richardson v. Wright,* 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972); *Wheeler v. Montgomery,* 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). See also *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1503, 4 L.Ed.2d 1307, 1308 (1960).

*meida v. Lucey,* 372 F.Supp. 109, 111, 113 (D.Mass.), *aff'd mem.,* 419 U.S. 806, 95 S. Ct. 22, 42 L.Ed.2d 36 (1974). For many individuals an automobile is the most valuable personal possession. It is clear that the owner cannot be deprived of this property without notice and hearing.

The central question then is when must the hearing be afforded? The answer to this question, however, is no longer as clear as it once appeared to be. The statement that one was entitled to a hearing before deprivation except in extraordinary circumstances,[14] which appeared to be the rule after *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), was considerably weakened by *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406, 415 (1974), where a majority of the Court stated that:

> The usual rule has been "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." *Phillips v. Commissioner,* 283 U.S. 589, 596–597 [1289] (1931).

And, although *Fuentes* experienced some degree of resurrection in *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court did not specifically address the issue of the timing of the required hearing. Perhaps the clearest guide is given in the concurring opinion of Justice Powell. After repeating the above quotation from *Mitchell,* he goes on to say:

But the recent expansion of concepts of procedural due process requires a more careful assessment of the nature of the governmental function served by the challenged procedure and of the costs the procedure exacts of private interests.

*North Georgia Finishing, Inc.,* 419 U.S. at 610, 95 S.Ct. at 724, 42 L.Ed.2d at 759. See also *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Mathews v. Eldridge,* —— U.S. ——, 96 S.Ct. 893, 47 L.Ed.2d 18, 44 U.S.L.W. 4224 (1976).

Conn.Gen.Stat.Ann. § 14–150 establishes a procedure under which the State can remove from the streets three different classes of automobiles. The importance of immediate removal and the cost of providing pre-towing notice are different for each class of automobiles.

The State's interest is the strongest in the case of automobiles which are a menace to traffic. We have no doubt that such an automobile can be towed without notice so long as the owner is given a prompt opportunity to contest the action and the charges and to recover his vehicle. An automobile which posed a hazard to the safety of other individuals would satisfy even the stricter "extraordinary situation" of *Fuentes.*

A different case is posed however when the automobile simply appears to be abandoned, but does not pose an imminent threat to safety. While the State has an interest in removing abandoned vehicles to prevent congestion and the general deleterious effect they can have on a neighborhood, the need for immediate removal is not as pressing. The cost of providing adequate notice

---

**14.** There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. *Boddie v. Connecticut,* 401 U.S., at 379 [91 S.Ct. at 786, 28 L.Ed.2d at 119]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.
*Fuentes v. Shevin,* 407 U.S. 67, 90–91, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556, 575 (1972) (footnotes omitted).

and perhaps even a hearing is not as great.[15]

The importance of prior notice is increased in this situation because the statute in question is not narrowly drawn. It neither defines "abandoned" nor sets out standards to guide the officer who must make the determination. In the case at hand the determination was made that the car was abandoned because it had not been moved within 24 hours and because it had a flat tire. Neither of these facts seems particularly conclusive. Failure to respond to adequate notice, on the other hand, would be particularly probative in the determination of a question which turns essentially on the subjective intent of the owner of the vehicle.[16]

Unregistered vehicles present a middle ground. In the State's favor are the fact that this presents one method of policing the State vehicle registration laws, and the fact that a violation can be readily determined. There is not a serious potential for abuse of discretion. Furthermore, the very fact that an automobile is unregistered would make notification of the owner more difficult and potentially delay a hearing should the State choose to require one prior to seizure. On the other hand, an unregistered car presents even less of a hazard to others than one which has been abandoned, and, since a hearing must be held at some point, it might least expensively be held before towing charges are incurred.[17]

We conclude that towing, detention and sale of motor vehicles, when carried out in accordance with the section's provisions, deprive affected vehicle owners of property without due process of law in violation of the fourteenth amendment. Section 14–150 does not grant an affected person the right to a hearing with respect to the legitimacy of these acts, either before or after their occurrence. Nor does any other provision of Connecticut law. Nor does § 14–150 or any other Connecticut statutory provision even require a prior or subsequent ex parte hearing before a neutral state official. Thus, the provisions of § 14–150 deprive an affected vehicle owner of property without due process of law.[18]

---

15. It is alleged in the defendants' papers that it was the practice of the Groton Police Department to mark an automobile for a 24-hour period before towing it as abandoned. This procedure is not required by the statute. Some such statutory requirement might well furnish adequate notice before towing, even if more should be required before detention or sale.

16. Attempting to establish standards for an objective determination of abandonment carries the danger of drafting a statute which would be unduly harsh in its application to the poor. Those factors which might appear to be evidence of abandonment, e. g., lack of paint, need for repairs, broken windows, can just as easily be evidence of an owner who cannot afford to maintain his vehicle in perfect condition. It would be this very owner who would suffer the greatest hardship if his vehicle were unjustly towed.

On the other hand the lack of standards leaves the officer with broad discretion. In this case, for example, there was an allegation that the automobile was towed in response to the complaint of a resident of the neighborhood who objected to the number of cars parked on the street.

17. Although not specifically raised, it would seem to follow that if an owner is successful at his hearing, he should not be liable for the towing charges. Given this result, it is in the best interests of both the owner and the state to avoid improper towing charges.

18. See, e. g., *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965) (right to hearing "at a meaningful time and in a meaningful manner" necessary to "due process"); *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971) (acknowledging "root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event" (footnotes omitted, Court's emphasis)); *Fuentes v. Shevin*, 407 U.S. 67, 84, 90–92, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556, (1972) (hearing necessary to "due process"); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (prior ex parte hearing before neutral official sufficient for "due process" if additional criteria satisfied); *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963,

Plaintiff Tedeschi is entitled to judgment with respect to his requests for declaratory and injunctive relief.

It is not necessary for this court to attempt to define exactly what procedure the State must follow. The Connecticut legislature can best balance the interests at stake and choose from the constitutional procedures which are open to it. Thus in drafting a new statute, should it choose to do so, the State should weigh the interests presented by each classification, and arrive at one or more procedures which in each case afford due process to the owner of the vehicle.

The foregoing may serve as the court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

Form of judgment may be submitted on notice.

SO ORDERED.

2975, 41 L.Ed.2d 935 (1974); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1975); *Mathews v. Eldridge*, —— U.S. ——, 96 S.Ct. 893, 46 L.Ed.2d 18, 44 U.S.L.W. 4224 (1976).