[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Facts
The parties are adjoining property owners of residential premises located on Elm Street in New Haven. The plaintiff is the current owner of 746 Elm Street, and the defendant is the current owner of 742 Elm Street.
Dividing these properties is a driveway about 7=feet wide, bisected by the property line between the 2 parcels. Deeds to both parcels recite that the driveway, from Elm Street and southerly for a distance of 90 feet is subject to "a right of way for all purposes whatsoever over each and every portion of the same."
The plaintiff claims sole and exclusive title by adverse possession in and to a roughly rectangular parcel of land which includes the 7 1/2 x 90 foot right of way, an irregular shaped strip running along the defendant's house and the easterly border of the right of way, and a further area between the property line and a straight line formed by extending from the westerly wall of the defendant's house an imaginary line some 30 feet southerly and 20 feet northerly to Elm Street.
The plaintiff also claims abandonment of the right of way by the defendant and his predecessors in title.
 DISCUSSION I
Background
Adverse possession is not favored in law and the adverse possession claimant has the burden of proof by clear and convincing evidence. (Citations omitted). Thus, in this case, the plaintiff must prove the owner was ousted of possession, openly, notoriously, exclusively, without license or consent of the owner, under a claim of right for at least 15 years. (Citations omitted).
The following dates and facts are significant in evaluating the actions taken by the parties and their predecessors in title:
1. Thomas F. Pond, Jr. is the predecessor in title to the plaintiff and he acquired #746 in 1978 from a Mrs. Miller. She owned both #742 and #746 at the time of the Pond purchase. CT Page 4177
2. The driveway and abutting areas belonging to #742 were paved prior to the purchase and sale by Pond.
3. After installing an in-ground pool on his property, Pond had a fence placed on the #742 property, running 30 feet southerly from the end of the house at 742 and then at a right angle to the property line between #742 and #746. In this latter segment of the fence, a hinged gate was included. This work was done after September 6, 1983.
4. On February 2, 1996, the plaintiff purchased 746 Elm Street from Mr. Pond.
5. The defendant purchased #742 on April 3, 1996, but in March he commenced using the parcel in dispute, opening the gate portion to reach the rear of #742 and in May he removed a portion of the hinged fence.
 II Evidence of Adverse Possession
The plaintiff relies largely on the deposition testimony of Thomas F. Pond, Jr. to support her claims.
Mr. Pond testified that he treated "the driveway" as his own, removing snow, patching holes and ordering persons who stopped in cars in the driveway to move on. He maintained a storm drain and removed any accumulations of debris (of course it should be noted that as the possessor of a right of way over this area, these actions are consistent with that interest).
However, Mr. Pond's testimony also raises questions as to some elements of the adverse possession requirements. Offering his testimony via deposition Mr. Pond was asked:
"When you built the fence, did you put a hinge on a portion of the fence? He responded "Yes," and when he asked the purpose he responded:
 "That's why earlier I asked to look at the deed because my memory of it was that I needed to provide access to the backyard.:
CT Page 4178 (Transcript pages 14 and 15).
Then, he went on to say, referring to a conversation with Mrs. Miller, the previous owner of #742 and #746,:
 My sense is that she may have said, "Well, you know, you have the driveway and the garage, but if people have to get in the backyard, you have to let them get there," which is what I assumed anyway because the other side of the house is so narrow you couldn't get anything back there. So you may have to get in there with a crane or a cherry picker or something in the backyard, to remove trees, what-have-you, so you needed to be able to get something back there. So it was my understanding that I had to proved access, but I don't know where that came from.
(Transcript page 16)
He added:
 "I hinged the entire section from the garage to the corner so that it could open so like that tow truck could get in the backyard if they had to."
This latter reference was to an occasion in 1978 or 1979 when the owner of #742 was permitted access to remove a boiler that had been taken out of the basement and placed in the rear yard.
The hinged fence referred to was erected at the earliest in 1983, after Mr. Pond obtained a permit to install a pool which was completed on September 6, 1983. The fence went up shortly thereafter.
These two occurrence are significant in view of the requirement that for possession to ripen into title by adverse possession, that possession must be hostile.
On these two occasions, Mr. Pond recognized that the owner of #742 had rights over the parcel in question, an acknowledgment which appears from his testimony to have existed throughout his ownership of #746.
For, at page 25 of his deposition transcript, his cross examination proceeds as follows:
CT Page 4179 Q. Professor, anyone could open the gate without you being there and without you providing a key or providing access?
A. Absolutely.
 Q. Professor, did you ever post a "No Trespassing" sign in the driveway?
A. No.
 Q. You testified earlier when Mr. Nugent was questioning you that you put the hinge there to allow access to the backyard of 742?
A. Yes.
 Q. And it was your understanding that that access would be by the owner or occupants of 742 Elm Street?
 A. Probably the owner. I just didn't let the tenants, no. But the owner, fine.
I felt I had to.
Q. You believed —
 A. I thought I had to. I believed that the owner had the right of ingress; not egress, but ingress.
 "The possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other. 1 Greenl. on Ev. (14d1 Ed.) § 109; Smith v. Martin, 17 Conn. 399, 401; Deming v. Carrington, 12 id. 1, 5; Rogers v. Moore, 10 id. 13. Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it. Lewis v. New York H.R. Co., 162 N.Y. 202, 220, 56 N.E. 540."
Paton v. Robinson, 81 Conn. 547, 551 (1909).
Such an acknowledgment of the owner's title terminates the running of the statutory period, and any subsequent adverse CT Page 4180 use starts the clock anew. 3 American Law of Property § 15.9, pp. 810-11; 7 Powell, Real Property § 1014.
Lazoff v. Padgett, 2 Conn. App. 246, 250 (1984). See also "A Practical Guide To Disputes Between Adjoining Land-Owners — Easements," Backman and Thomas, 1998 Matthew Bender, Ch. 7-21, § 7.03 [4] [b].
A recognition by the adverse claimant of title in the owner will arrest the running of the period of limitations. Thompson on Real Property, Vo. 5, Sec. 2548, pg. 6330.
 III
Since the fence in question was not erected until 1983 and Mr. Davis opened it, crossed through it and removed it in 1996, there was no uninterrupted period of 15 years. The fence, per se, cannot be considered an indicia of adverse possession.
 IV
The defendant argues in his brief that much of the testimony of Mr. Pond, offered to demonstrate "open, notorious and exclusive possession," was actually consistent with the right of way he enjoyed by deed over the driveway portion of #742.
The court noted above that sealing, patching, shoveling, etc. was just such activity. Mr. Pond's ordering people to move vehicles blocking the right of way was also appropriate for the holder of the right of way.
This type of activity did not constitute notice to the adjoining owner or owners of an adverse possession claim.
 V
The plaintiff argues that the defendant's predecessors abandoned their dominant estate by not exercising their rights for over 15 years.
Certainly, Mrs. Miller did not consider her rights abandoned, expressly stating and reviewing them in her conversation with Mr. Pond. It was a subsequent owner to Mrs. Miller who was permitted to remove a boiler by crossing into his backyard.
CT Page 4181 Finally, the defendant's predecessors cannot be deemed to have abandoned their rights. When they were asserted, Mr. Pond conceded they existed and acted to preserve them by erecting a hinged fence. The only purpose served by the hinged portion was to admit access to the backyard of #742.
The actions of Mrs. Miller, the subsequent owner, and Mr. Pond were all inconsistent with the theory of abandonment. Not even Mr. Pond thought this to be the actual state of affairs. Thus, there can be no finding of abandonment. See Richardson v.Trowbridge, 111 Conn. 90, 93 (1930), where mere non-use was not sufficient to support a conclusion of abandonment.
 VI
There can be no adverse possession if the possession is exercised with the consent or license of the owner. Lowenberg, etal v. Wallace, et al, 151 Conn. 355, 357 (1964); Backman Thomas, supra, Ch. 7-21, § 7.03[5].
In the conversation Mr. Pond related he had with Mrs. Miller, supra, Mr. Miller is reported to have said:
 ". . . you have the driveway and the garage, but if people have to get in the backyard, you have to let them get there."
This indicates that Mrs. Miller was recognizing Mr. Pond's right to get to his garage via the right of way, but she was also pointing out that any blocking of her rear yard was permitted, subject to the rights of those who "have to get in the backyard."
 CONCLUSION
The plaintiff having failed in sustaining the burden of proof on these elements of adverse possession, denies the relief requested and judgment may enter for the defendant on the first count.
The second count alleging a trespass cannot be sustained in light of the decision on the first count and judgment may enter for the defendant on this count also.
Anthony V. DeMayo Judge Trial Referee CT Page 4182